## John Shultz, Appellee, v. Patrick McCarty, Appellant.

## Gen. No. 6,012.

1. MORTGAGES, § 31*—*who has burden of showing that deed is mortgage.* A person claiming that an absolute conveyance of land was intended only as security for a loan has the burden of establishing his contention by clear and decisive proof.

2. MORTGAGES, § 14*—*when deed held to be mortgage.* In a case of real doubt as to the actual intention of the parties, a court of equity will incline to construe an absolute conveyance of land as a mortgage rather than as a sale.

3. MORTGAGES, § 683*—*who may redeem from deed intended as mortgage.* Where land is conveyed as security for a loan, the grantor has the right to redeem therefrom.

4. MORTGAGES, § 191*—*when conveyance of incumbered land closely scrutinized.* Conveyances of incumbered land from mortgagor to mortgagee will be jealously scrutinized by a court of equity to ascertain whether the transaction is fair and free from oppression, fraud or undue influence.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. Mortgages, § 21*—*when absolute deed held a mortgage.* Where land was conveyed as security for a loan, which was to be paid within five years, and after the expiration of that time the grantor executed a quitclaim deed of the property to his grantee, and thereafter, although remaining in possession and paying the interest and taxes regularly and making valuable improvements, the grantor from time to time accepted leases of the land from his grantee, *held* that the quitclaim deed was given as further security for the original loan, and that it was not intended as an absolute conveyance.

6. Mortgages, § 32*—*when admissions of grantee competent to show deed to be mortgage.* Statements made by a grantee to a third person, tending to show that an absolute conveyance of land was intended merely as a security for a loan, are admissible in an action by the grantor to redeem.

7. Mortgages, § 732*—*when laches bars right to redeem from deed intended as mortgage.* The right of a grantor to redeem from an absolute deed intended as security for a loan, *held* not barred by laches.

8. Mortgages, § 733*—*when grantor estopped from redeeming from deed intended as mortgage.* The fact that the grantor of land, by way of security for a loan, accepts a lease thereof from his grantee, does not bar the former's right to redeem, where the grantee, during the period covered by the lease, continues to recognize the existence of the mortgage by accepting interest on the debt.

9. Mortgages, § 733*—*when grantor estopped from redeeming from deed intended as mortgage.* Where the grantor in a deed, intended as security for a loan, accepts a lease from his grantee, the rule forbidding a tenant disputing his landlord's title will not prevent the grantor from maintaining an action to redeem, where the grantee during the lifetime of the lease recognized the existence of the mortgage by accepting interest on the debt.

Appeal from the Circuit Court of Jo Daviess county; the Hon. Richard S. Farrand, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed April 15, 1915. *Certiorari* denied by Supreme Court (making opinion final).

William N. Cronkrite and Robert A. Hunter, for appellant.

Hodson & Hodson and Martin J. Dillon, for appellee.

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

March 24, 1885, appellee, John Shultz, procured a loan of $8,000 for five years from Patrick McCarty, the appellant, upon his promissory note bearing seven per cent. interest, secured by a mortgage on his home farm of four hundred and ten acres. Afterwards in March, 1888, he procured from appellant another loan of $4,000, and the entire sum of $12,000 was at the instance of appellant then secured by a warranty deed of the premises executed by appellee and his wife. There was an oral agreement at the time that the deed should be considered a mortgage and that appellee should be given a bond for a deed. Such a bond was executed two or three days afterwards and placed of record by appellant but not delivered to appellee, and he seems not to have known of its existence. The condition recited in the bond was that appellee should pay $12,000, with seven per cent. interest thereon, and all taxes on the premises, and the time fixed for reconveyance was May 1, 1890, though appellee in his testimony says that the time orally agreed upon was five years, and appellant testified that he thought it was three or five years. May 13, 1890, appellee, his wife, not joining, executed a quitclaim deed of the premises to appellant, but remained in possession, paying $840 a year, and paying taxes and insurance on the buildings, and making improvements of considerable value. He signed leases from time to time for the term of one year each, after the first four or five years. Appellee claims that the quitclaim deed was executed at the request of appellant to aid him, appellant, in trouble that he was having with the taxing authorities, and that it was expressly agreed that it should have the effect only of a security for the loan of $12,000. The premises were worth at this time from $15,000 to $20,000, and increased in value, probably because of the general rise in market value of

farm lands, until they are now worth from $35,000 to $40,000.

Appellee filed a bill in this case to have the transaction declared a security for the money loaned, for an accounting and reconveyance, and to enjoin a pending ejectment suit. Appellant answered, claiming absolute title and denying any agreement to reconvey except said bond for a deed. The chancellor heard the proofs in open court and entered a decree for the complainant, and the defendant brings the case here on appeal.

There is no question but the warranty deed was intended solely and only as a mortgage. Appellee's evidence is to that effect, and appellant, as a witness was asked if at the time of the transaction he told appellee that he would not take a mortgage on the place but would take a deed as security so that he, appellee, could not give a second mortgage on the place to someone else, and he answered, "Yes; I think I said that," and further testified that in accordance with that statement the warranty deed was given. Appellant's claim of unconditional title must depend on the quitclaim deed, and the inquiry is, what was intended by the parties at the time this deed was executed (there is no intervening interest of a third party). Was it intended solely and only as a security for the $12,000 then owing, or was it intended as an unconditional conveyance of the land? We agree with appellant that the burden of proof was on appellee to show that the transaction was only a security for money loaned, and that before a court of equity will so hold the proof must be clear and decisive; this court so held in *Babcock v. Babcock*, 179 Ill. App. 188. The authorities are numerous to that effect, though it is also said that in case of real doubt as to the intention of the parties, the courts will incline to construe the transaction as a mortgage rather than as a sale, and that the two rules are not inconsistent. 17 Cyc. 1018. If the trans-

action was intended by the parties thereto as a security for money loaned, there was a right of redemption. The Supreme Court of Colorado in the late case of *Reitze v. Humphreys,* 53 Colo. 177, quoted from an earlier case of the same court what is there said to be the language of Judge Story: "If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in effect a mortgage." The rule announced in this quotation has been applied in varying language by many courts to many conditions of facts. We are referred to no case, and know of none, where a conveyance clearly intended by the parties thereto, at the time it was made, as a security has been by a court of equity held unconditional.

Appellee testified that at the time the quitclaim deed was given, appellant told him that he was having trouble and wanted him to sign a quitclaim deed and he answered, "You have got one deed, how many more do you want?" That they went up into the office of appellant's attorney and he said appellant had been called to the courthouse by the county board, and wanted a quitclaim deed on that property; and appellant· said if he did not get the deed he would have to foreclose, but if he did get it he would give a bond for five years longer to redeem it in, and that would protect both of them, and that it would make no difference, whenever he paid the $12,000 and interest he would reconvey. There was no consideration paid. Appellant told appellee he would have to pay taxes and keep up the expenses as he had always done. That afterwards in April, 1895, appellant said he had nothing to show for what he was to get on the land and asked appellee to sign a lease providing for an annual rental, which was done, and such leases were executed annually thereafter until 1912, with the exception of some years that were omitted. In 1912, appellant told appellee that he must pay $1,000 inter-

est in the future, or $150 more than he had been paying, which he refused to do. He described the improvements he had made on the premises from time to time, and testified that they cost him about $8,500. There is considerable dispute about the value and cost of the improvements, but there is no question that they were of a kind and character such as a man in his circumstances is likely to make on his own land, and entirely inconsistent with the custom of tenants in caring for lands of their landlords. Neither is there any doubt that appellant paid no such attention to the premises as is usual with owners of leased land.

Appellant testified, as to the quitclaim deed occurrence, that appellee desired to sell him the place and they told the lawyer that he had sold it for $12,000, the $8,000 that he owed and $4,000 more; that nothing particular in addition to that occurred, and he gave him the $4,000 and got the deed; that he does not recall the details of the transaction. He confuses the two deeds in his testimony and evidently has no clear recollection of the quitclaim deed transaction; but he denies explicitly any statement to appellee that he would reconvey, and also statements testified to by other parties, hereinafter mentioned, to the effect that the transaction was a mortgage. He admits that $840 a year and taxes and insurance were paid, and calls it rent, and says that he went out to the place about twice a year, except in some years he was not well, and knew of buildings that appellee was placing on the premises, and lent him small sums of money from time to time, which had been paid, and took chattel mortgages for rent that was past due sometimes, which have also been paid. A son of appellee testified that he was present several times in the last four or five years when interest was paid appellant, and that he took the money up there three or four years ago, and appellant would say each time that he was glad they brought the interest and would be glad if the debt was

paid; that it would be nice if they had the farm all their own. One Weis testified that he called on appellant in 1900 or 1901 for a loan and appellant told him he did not have any money at present and mentioned the Shultz loan, and said he only wanted his own, if Shultz paid him the $12,000 with seven per cent. interest he could have a deed. One Brodrecht testified that two or three years ago appellant told him that he thought Shultz was getting along well, that he paid off the chattel mortgage and was paying his interest all right and had everything paid except what he, appellant had against the place. Two members of the board of review testified that they questioned appellant in 1911 about the transaction with Shultz, and he said he had $12,000 on the Shultz farm, and was protected by a contract. Another son of appellee testified that in August, 1911, appellant told him that he had a deed of his father's farm and that it belonged to him until his father paid him the $12,000 on it. It does appear that in 1897, appellee was endeavoring to get the money to pay the incumbrance, and in discussing the question of a reconveyance, appellant demanded $14,000 instead of $12,000 for a deed, which appellee refused to pay, and the matter dropped there. There is considerable testimony as to the value of the land and improvements made from time to time, and some evidence tending to show that appellee is mistaken about unimportant events, but the foregoing is the substance of the proofs on which the decree was entered.

When the quitclaim deed was executed the relation of mortgagor and mortgagee existed, and contracts between parties so situated are scrutinized by courts of equity with jealousy to see that the transaction is fair and unaccompanied by oppression, fraud or undue influence. *Cassem v. Heustis*, 201 Ill. 208, and authorities there cited. The record in our opinion leaves no reasonable doubt that the quitclaim deed was not in-

tended, when given, as an absolute conveyance, but was intended only as a part of the transaction which was a security for money loaned.

It is argued that the evidence of statements of appellant to third persons to the effect that the transaction was a security was improperly admitted. Such statements were competent evidence tending to show what the agreement was at the time the deed was made, under the rule that declarations of a party to a suit against his interest are admissible. It was said in *Lindauer v. Cummings,* 57 Ill. 195, on page 200: "It has been held, that evidence of such declarations, alone, is insufficient, proof to show an absolute deed to be a mortgage." And similar statements are found elsewhere in the cases and text-books discussing the weight to be given to such statements, but these expressions are not authority for the position that the statements are incompetent evidence, they imply that they are competent.

Appellant says the right to redeem and the right to foreclose are reciprocal, and if one is barred the other is barred, and calls our attention to section 11 of our Limitations Act (J. & A. ¶ 7206), providing that no action to foreclose any mortgage or deed of trust in the nature of a mortgage shall be begun after ten years from the time the right of action accrues, and to a number of cases where the right to redeem has been denied because of laches of the party asking relief, and urges that the court should have held the defendant barred because of delay in bringing his action. The right to foreclose was not barred so long as the mortgagor recognized the debt by paying interest. *Stein v. Kaun,* 244 Ill. 32. Notwithstanding this statute, a suit to foreclose a mortgage may be begun at any time before the debt secured thereby is barred. *Stein v. Kaun, supra* and *Kraft v. Holzmann,* 206 Ill. 548. It was held in *Coates v. Woodworth,* 13 Ill. 654, that no lapse of time short of that fixed by the stat-

ute of limitations could forfeit the right of redemption, and this seems to be the general law, except in cases where there has been great negligence, unexplained acquiescence in an adverse claim, or intervening rights of third parties, and it is said that even then the court will listen to any plausible excuse for the delay. 27 Cyc. 1820.

Appellant relies much on the fact that appellee accepted leases of the premises, as evidence that he understood the transaction to be an unconditional conveyance, and also on the question of laches, claiming that because of these leases as well as because of appellant's demand in 1897, before mentioned, of $14,000 for a deed, that appellee had known for so long a time that appellant claimed the unconditional title, that he was guilty of such delay in bringing his action as to bar his right to relief. These facts tend to support appellant's contention that the quitclaim deed was intended as an unconditional conveyance, but they are overborne by other evidence in the case that it was not so intended. When this is determined, the fact of the leasing does not convert the mortgage into an unconditional conveyance. 27 Cyc. 998. The devices of lawyers to circumvent the law providing a debtor his equity of redemption are numerous, but we are cited to no authority and do not conceive any principle that would effect that purpose by requiring the debtor to sign a lease from the mortgagee of the mortgaged premises. If this matter of leasing be treated as the actual possession of the premises by appellant, the right to redeem would not be barred as long as appellant recognized the existence of the mortgage as a continued security, by accepting interest on the debt secured thereby. 27 Cyc. 1821. The debtor is not estopped by recitals in leases and other instruments executed after the deed is made; equity will relieve him from any estoppel created by such instruments as well as from the estoppel by the deed itself. *Sut-*

*phen v. Cushman,* 35 Ill. 186. These authorities also answer appellant's contention that appellee should not have been permitted to maintain his suit, because a tenant cannot be permitted to deny his landlord's title.

There is some objection to the rulings of the court on the evidence, but none was excluded that we deem material and competent. The hearing was before the court, and he could hardly err in admitting incompetent evidence. Appellant argues earnestly that the conclusion reached by the chancellor involves the finding of fraud on the part of appellant and his attorney acting in the transaction. It is not necessary to presume that any actual fraud was attempted or contemplated when the deeds were given. It was an attempt to secure a loan of money by a deed instead of a mortgage, very likely because it was supposed the debt would not be taxable, or that the taxing authorities would consider it not taxable. Such attempts are not unheard of and do not necessarily impute moral turpitude. Appellee is evidently an easy going man that has signed almost any paper that appellant or his attorney asked him to, and has paid for about twenty-five years a high rate of interest on $12,000 to appellant, making the transaction profitable to appellant if he now receives his principal. The decree in our judgment not only does justice to both parties, but is also abundantly sustained by the evidence, and therefore it is affirmed.

*Affirmed.*