JAMES PURVIANCE *et al.*, appellants, *v.* ISAAC HOLT, appellee.

## *Appeal from Madison.*

When an instrument in writing, which is the basis of a suit or action, is lost, to confer jurisdiction upon a Court of Chancery, there must be an affidavit of its loss. This rule, however, only applies in cases where, if the same had not been lost, the remedy of the party would have been at Law, and not in Chancery.

Parol evidence may be admitted to show that an absolute deed, whatever may be its covenants, was intended as a mortgage, or mere security for the payment of a debt, and the grantor can have relief in Equity.

BILL IN CHANCERY for relief, &c. in the Madison Circuit Court, brought by the appellee against the appellants. The allegations of the bill, the answers of the defendants below,

the testimony of witnesses, and the decree of the Circuit Court are substantially set forth in the Opinion of the Court.

*L. B. Parsons, Jr., & H. W. Billings,* for the appellants.

1. The Court below should have dismissed the suit for want of jurisdiction, because

*First.* The Court had no jurisdiction, as the party had a remedy at law; and further, the suit depending, as shown by the pleadings and evidence, entirely upon the loss of a bond, it was necessary to give a Court of Equity jurisdiction to have annexed to the appellee's bill an affidavit of the loss of the bond. 1 Story's Eq. Jur. 99; §§ 83–4, and note; *Pennington* v. *The Governor,* 1 Blackf. 78; Cooper's Eq. Pl. 125–6, 208; *Walmsley* v. *Child,* 1 Vesey, Sen. 341–6; *Whitchurch* v. *Goulding,* 2 Peere Williams, 540; *Rayburn* v. *Shortridge,* 2 Blackf. 481; *Pert's heirs* v. *Taylor's devisees,* 2 Bibb, 558; 1 Mad. Ch. 27; Story's Eq. Pl. 342–3, § 313.

*Second.* Advantage of a want of jurisdiction may be taken at any stage of the proceedings. 1 Barb. Ch. Pr. 39; Story's Eq. Pl. 9, § 10; *Bryan* v. *Blythe,* 4 Blackf. 251, and note.

2. The Court allowed parol evidence to be introduced to vary and contradict instruments under seal, contrary to law. *Broadwell* v. *Broadwell,* 1 Gilm. 605–8.

The only cases where such testimony can be introduced, is where fraud, accident, mistake or surprise are alleged, and then the allegation must be sustained by the clearest and most conclusive proof. 1 Story's Eq. Jur. §§ 152–3, 6, 7; *Griswold* v. *Smith,* 10 Verm. 455; *Stevens* v. *Cooper,* 1 Johns. Ch. R. 425–9; *Parkhurst* v. *Van Cortlandt,* Ib. 282; *Botsford* v. *Burr,* 2 do. 415; *Lyman* v. *United Ins. Co.* Ib. 631–3; *Moran* v. *Hays,* 1 do. 342–3; *Wesley* v. *Thomas,* 6 Har. & Johns. 26–8; *Hale* v. *Jewell,* 7 Greenl. 437; *Child* v. *Wells,* 13 Pick. 123; *Paine* v. *McIntire,* 1 Mass. 68; *Thomas* v. *McCormac,* 9 Dana, 108.

3. The Court should have declared the bond void on account of the failure of consideration by a breach of the covenants of the appellee.

The deed contains full covenants of warranty against all

liens, charges and incumbrances. The deed is dated 14th September, 1842, and subsequent to the date of the arrest of the appellee, for the crime of which he was convicted fined and imprisoned, and to pay which sum the land was sold to Barnsbach. So that the covenants of the appellee were broken and the land entirely lost, for which alone the bond was executed. Rev. Stat., Crim. Code, §§ 52, 192.

The land was bought at the sale by Barnsbach without collusion with the other appellants for his own use, and by which sale all the title of appellants passed to him, and the appellants. Purviance now holds under a title from Barnsbach, and not from appellee. Hence, the appellee cannot seek successfully to set up a bond, the consideration of which has totally failed by his own crime. *Frisbie* v. *Hoffnagle,* 11 Johns. 50; *Rice* v. *Goddard,* 14 Pick. 295; *Miller* v. *Howell,* 1 Scam. 500;Rev. Stat. 385, Ch. 73, § 10; *Tillottson* v. *Grapes,* 4 New Hamp. 446.

Nor does it make any difference whether it was known to the grantee at the time of purchase, that there were incumbrances of any kind on the land, as it is presumed unless such incumbrances are expressly named in the deed and reserved from the general warranty. Against that, the grantor will settle them and protect the property. *Suydam* v. *Jones,* 10 Wend. 182–6; *Townsend* v. *Weld,* 8 Mass. 146–7; *Harlow* v. *Thomas,* 15 Pick. 69–70; *Frisbie* v. *Hoffnagle,* 11 Johns. 50; *Ingersoll* v. *Jackson,* 9 Mass. 469.

4. The appellants were not bound to have paid off such incumbrance, and not permit the land to have been sold; they might not be able to do so; the record shows they were not, and were obliged on purchasing the land from Barnsbach to borrow all the money at an exorbitant interest, and mortgage the land to secure its payment. Had they, however, been able to have purchased it, and done so, they could then have recovered the $365 paid for it from the appellee, as the measure of their damages, and which must have gone as an off-set to their bond, unless it was paid up to appellants. *Stannard* v. *Eldridge,* 16 Johns. 255; *DeLasergue* v. *Morris,* 7 do. 358; *Hall* v. *Dean,* 13 do. 105.

Inadequacy of consideration is no ground of relief. 1 Story's Eq. Jur. § 245–6, 257.

The gift of the personal property is such an one as a Court of Equity will sustain, at least on condition of the appellants' paying off the $70 of debts. 2 Story's Eq. Jur. 102–3, § 793.

*W. Martin,* for the appellee.

The Opinion of the Court was delivered by

PURPLE, J.* The record in this suit shows that Isaac Holt filed, on the 15th of October, 1844, his bill of complaint against said appellants, stating that on the 14th of September, 1842, he conveyed to Purviance and Holt, two of the defendants in this suit, 106 acres of land; that the consideration was to be made up by paying about $70 of debts due by the appellee, by supporting him during life, and paying him an annuity of $60 a year, commencing with 1st January, 1843; that the appellee at same time gave said two appellants a power of attorney to enter up judgment against appellee, for $1,100, for the purpose of making them judgment creditors; that appellant had been bound over, previous to conveyance above, to answer a charge of an assault and battery with intent to kill, and said two appellees were his securities; that at time of conveyance of said land, he also conveyed to appellants between $500 and $600 worth of personal property, for the purpose of enabling appellants to redeem land, if sold to pay any fine inflicted on appellee; that at same time said two appellants executed their bond, conditioned to pay consideration as above named; alleges that the land was subsequently sold to satisfy a judgment against appellee, on account of said assault and battery, for the sum of $361; that said Barnsbach bought said land at sale, for said appellants; alleges Barnsbach had no interest in said land, but colluded with the other appellants to defraud appellee; that the certificate of purchase was assigned to said Pur-

---

* WILSON, C. J. did not sit in this case.

viance and Holt, and they alone paid the $361; alleges $361 was far less than value of personal property aforesaid; that appellants had other money and effects belonging to appellee; that they have not complied with their said bond; that bond was stolen and destroyed by said Purviance and Holt; that they made false representations to obtain said conveyance, and to cheat appellee; prays appellants may be decreed to make a quit-claim deed to appellee of said land; to account for rents and profits, and also for the amount of personal property received over $361, and the bond declared void; or, that bond stand as set out in bill, and Master decide how much shall be paid for board and lodging from date of deed, and that such amount, as also the $60 a year, be made a lien on said land.   An answer *under oath* was waived.

To this bill the appellants, Purviance and Holt, answered, admitting the execution of a deed by the appellee, and a bond by themselves; but deny that the consideration of deed or condition of bond were as alleged in bill; admitting a transfer of personal property; but deny it was at the time of the value, or for the purpose set forth; admit the sale of the land, but allege it was to satisfy a fine inflicted on appellee; expressly deny that it was purchased by Barnsbach for them in any manner; also, expressly deny taking or destroying the bond, or that they know any thing about it, unless the appellee has it: state that on the 8th September, 1842, the appellee came to said two appellants, proposed a transfer of personal property, executed and delivered to them a receipted bill of sale of said property; made no agreement for consideration; that they received it as a gift, knew but little about it, as to how much really existed or what was its value; all they ever found was not worth $180·50; state that on the 14th September, 1842, the appellants received, at the urgent request of appellee, a deed of said land, with full covenants of warranty against all liens, charges or incumbrances; that various considerations were proposed for said land, all of which the appellants rejected, except to pay the appellee fifty dollars a year, from 1st of January, 1843; *that such, and no other, was the*

*consideration* agreed upon and given for said land; that at
the same time, at the appellee's request, they agreed, in
consideration of the personal property previously transferred,
to pay certain small debts due by him, amounting to about
seventy dollars; that at same date last aforesaid, they exe-
cuted their bond, conditioned to pay said annuity of fifty
dollars a year and $70 of debts, *and nothing farther;* that
the power of attorney was given by appellee with the de-
sign of preventing his wife from obtaining alimony, in case
she obtained a divorce, for which she was then suing, and
which she has since obtained, and to secure the appellants
on the recognizance bond by them entered into for the ap-
pellee; that the land was not worth over $700 at most, and
no more than fair consideration for bond; that appellee was
brought to trial on an indictment, with two counts, at the
October term, 1843; a *nol. pros.* was entered to first count,
and appellee plead guilty to the second, for an assault and
battery with intent to commit great bodily injury, and was
fined by said Court $300; that by virtue of such conviction
the said fine and costs became a lien, charge and incumbrance
on said land, from the date of the arrest of said appellee,
and which was on or about the 2d day of September, 1842,
and before the conveyance of said land; that it was under
such conviction and fine, that said land was sold, and not to
satisfy a judgment as in the bill was alleged; appellants al-
lege that they were not bound to have appeared at the sale;
that the purchase of Barnsbach, under a lien anterior to the
date of deed to appellants, discharged them forever from the
conditions of their bond; that they found Barnsbach present
at the sale and intending to purchase for himself; that they
persuaded him to agree to transfer the certificate of purchase
to them, if they would pay him the purchase money and ten
per cent. interest by the last day of March term of the
Madison County Commissioners' Court, in 1844, or in case
they did not do it, would give up any and all claim to said
land; that to comply with said agreement, Purviance bor-
rowed $365, at twelve per cent. interest, which he now
owes, and for which the land is mortgaged: answer further

denies that the appellants had any money or effects of appellee other than aforesaid, except one note for $13, and that part of the money received for it was paid to appellee, and part to another person at his request: states that appellee was sick at Purviance's house in October, 1843, and not in March; that in May, June and July, 1843, appellee was sick at one Kinder's, on account of which appellants paid said Kinder $45, and requested said appellee to indorse the same on their bond, that the appellee refused to produce bond or indorse the same; that this was some months before the appellee was sick at Purviance's house, when he alleges said bond was taken from him: answer denies not having complied with bond so far as legally bound to do so; states there has been paid $141·22 on said bond; and, further, that appellants have been at an expense of $120 besides, on account of appellee, and paid $365 for the land to Barnsbach, on account of incumbrance and sale, contrary to covenant of warranty of appellee; appellants did not know or suppose that any fine would have become a lien, otherwise would never have given their bond, as all the property would have been no adequate consideration; appellants claim an entire release from bond, but are ready to abide by it, if appellee will pay or discharge the above sums, amounting in all to $626·22, by them expended for appellee and by breach of his covenants; expressly deny any representations, as alleged, to procure the transfer, but allege that all propositions for the same came from appellee; appellee was a grossly intemperate, quarrelsome and dangerous man, and appellants never did or would consent to have him reside with them.

The answer of Barnsbach states, that he purchased the land at Sheriff's sale and paid for the same the sum of $361·00, the amount of the fine and costs assessed against Isaac Holt, the appellee: That he had intended, and made an arrangement to purchase the said land for himself, and for his own exclusive use and benefit, but that on or about the day of sale, viz: the 30th December, 1843, Purviance came to him and informed him, that he and John Holt were interested in the land by purchase from appellee, and requested him not to

Purviance *et al. v.* Holt.

persist in purchasing the land upon his own account, but to aid said Purviance and Holt in redeeming the same from the sale; that it was then agreed, that Barnsbach should purchase in the land, and that Purviance should be permitted to redeem the same by the March term of the County Commissioners' Court, 1844, by paying $362·00, and interest thereon at ten per cent; that said Barnsbach did so purchase with his own money and paid $361·00. That Purviance paid him according to the contract, and took an assignment of the sheriff's certificate of purchase to himself; that he *believes* if it had not been for the solicitation of Purviance, he would have bought the land himself, and Purviance and Holt would have lost the same.

George T. M. Davis and John R. Purviance are the only witnesses who testify to any facts in relation to the consideration of the conveyance by appellee to appellants.

Davis states, that on the day of the date of the deed, all the parties came to him and employed him to draw up the papers between them; that they all stated that the appellee had been arrested, and bound over on a charge of an assault with an intent to commit murder; and, that Purviance and Holt, appellants, had become his sureties for his appearance at Court in the sum of $500·00; that they desired to be secured against their liabilities in the event that Holt, (appellee,) did not appear at Court and take his trial pursuant to his recognizance; that it was also stated by both parties, that in addition to giving the security above named, it was the mutual understanding of the parties that the debts appellee owed should be provided for, and he be supported during his natural life; that to accomplish this appellee agreed to convey the land; that he drew the deed pursuant to the agreement which was duly executed; that appellee also transferred to appellants his personal property, as the parties informed the witness, estimated at $500 or $600—about the personal property, he had no definite recollection; that appellants executed to appellee a bond, which was drawn by witness, in which they bound themselves to pay to appellant according to his recollection, the sum of sixty dollars annu-

ally during his natural life; that it might have been $50·00 instead of $60 annually, the first payment to be made on the 1st January, A. D. 1843; that appellants also bound themselves to pay off certain small debts owing by the complainant, exclusive of the yearly allowance; that he could not distinctly remember the amount of debts to be paid; thinks between $70·00 and $80·00. There was one to one Starr, of $50·00 which was contingent, depending on the result of a divorce suit between appellee and his wife; that there was another agreement which was not in the bond, but which constituted a portion of the consideration of the conveyance of the land; that appellants were to take, free of expense, the appellee's youngest son, and keep him until they could provide a good place for him which they were to do; that the papers were all executed in his presence; that appellee gave the appellants a power of attorney to enter up a judgment against him for about $1100·00, as an additional means of perfecting the title; that his understanding was that in case the appellee was tried, and appellants did not have to pay the recognizance, appellee was to retain his interest in the land.

John R. Purviance testifies, that he was present at Davis's when the papers were drawn and executed; that at the time Purviance and Holt agreed to pay Isaac Holt $50·00 per year, and all his debts which amounted to less than $100; that he *thinks* the land was not to be re-conveyed to Isaac Holt; that he *understood*, that the $50·00 per year and the payment of the debts was to be in full satisfaction of the conveyance of the land, and that he *believed* there was no bargain as to board, lodging, &c.

Henry Aheman stated that he was present at the transfer of the personal property; that he understood that it was given to appellants, but in lieu of it they were to assist the appellee out of difficulty; but knew of no positive agreement that the personal property was worth from $168 to $178.

The residue of the testimony is in relation to the value, and annual rent of the land conveyed, and the items of account which the appellants claim against the appellee for expenditures and advances on his account. The estimated

value of the land varies in the opinion of different witnesses from $6·00 to $20·00 per acre; and the value of the rent of the improved portion, (about fifty acres,) from 75 cents to $1·80 per acre. The papers referred to in the bill and answers are made part of the record. From an attentive examination of the whole record, we are satisfied that the estimate made in the Circuit Court of the expenditures and advances of appellants for appellee, was the proper one, and, therefore, the evidence relative to the same is not noticed particularly. The Court decreed that the bond executed September 14, 1843, to pay $70 of debts, and $50, 1st day of January, 1843, and an annuity of $50 thereafter during life of appellee, be considered in full force and effect; and the Court, on taking account, found appellant indebted to appellee on 1st of November, 1845, $29—appellants decreed to pay this $29 on 1st January, 1846, and also, other $50 a year ever thereafter during life of appellee; that the land be subject to pay said sums of money, and liable to be sold on failure to pay the same; said lien, however, not to interfere with the said mortgage executed to secure Waddel and Whitesides—appellee to pay costs of suit.

The errors assigned are

*First.* That the Court erred in not dismissing the bill for want of jurisdiction;

*Second.* In allowing parol evidence to vary and contradict instruments under seal;

*Third.* In not declaring the bond void by reason of failure of consideration by breach of covenants of appellee;

*Fourth.* In not allowing the $365 and interest, paid on account of an incumbrance existing at the time of the conveyance of the land as so much paid on the bond; and

*Fifth.* In rendering any decree against the appellants, and not allowing the entire sum of $626·22 paid by appellants for appellee.

It will not be necessary to consider these questions in the order in which they are presented by these assignments of error. They present but two points worthy of consideration. The *first* is as to the jurisdiction of the Court. The argu-

ment upon this point has been made upon the assumption, that the existence of the bond is the foundation of the appellee's equity upon which he bases his right to file this bill; and numerous authorities have been cited to show, what is not denied, that when an instrument in writing, which is the basis of a suit or action is lost, to confer jurisdiction upon a Court of Chancery, there must be an affidavit of its loss. This rule, however, only applies in cases where, if the same had not been so lost, the party's remedy would have been at Law, and not in Chancery. The affidavit is required to confer jurisdiction in cases only, where ordinarily the remedy would be strictly a legal one. That is not this case. A Court of Chancery would have jurisdiction in this controversy, if there was no allegation of the existence or loss of the bond. The object of the bill is to ascertain by a judicial determination, what was the consideration of the conveyance of the land; and, to subject it to the lien of an annuity, which the appellee contends was one of the constituent portions of the consideration.

This brings me to the *second*, and really, only remaining point presented by the record. What was the consideration for this conveyance? Let us look at the facts. The appellee had been arrested for crime. The appellants had become security for his appearance at Court, and wished to indemnify themselves against their liability upon his recognizance. He had made them a bill of sale of his personal property, amounting in value to $180, without any apparent consideration, unless, as one witness stated, he understood it, they were in return to assist him in his defence. That they might be made liable to the amount of the recognizance, $500, was fully understood by them when they made the bond conditioned to pay the annuity and the appellee's debts. He was an old man, very intemperate, and had parted with all his property placing the same in their hands. Is it at all probable, then, setting aside the other evidence in the cause, that they placed any reliance upon the covenants in his deed? And when the testimony is considered, we are compelled to come to the conclusion that they assumed the risk of his

failure to appear and answer to the charge against him, together with the payment of his debts and the annuity of $50 per annum for the land, and that these things constituted the consideration of the conveyance. This was the price at which the land was purchased. It contradicts none of the written contracts, nor any portions of them, and he is as much entitled to have the payment enforced, as though they had agreed to pay in money for the whole. True, the covenant in the deed is a covenant against incumbrances. An incumbrance did exist. It is less in amount, however, than the parties by their contract contemplated that the appellants might be compelled to pay upon their recognizance.

The evidence of Davis in relation to the contract about the land and the conditions of the bond is positive. That of John R. Purviance is doubtful and uncertain. He thinks, believes and understands, but states nothing with certainty. The fact that Barnsbach purchased the land at the sheriff's sale, under an agreement to convey the same to the appellants, does not change the case nor the relative position of the parties. As against the rights of the appellee the appellants acquired no new title. In equity they were bound by their contract to remove this lien; and whether they had done so or not, they would still have been liable for the payment of the annuity. There was no error in the Court's permitting the consideration of the deed to be thus investigated. It violates no rule of law. Whatever covenants an absolute deed may contain, parol evidence may be admitted to show that it was intended as a mortgage, or mere security for the payment of a debt, and the grantor can have relief in Equity.

In this case we cannot discover that any injustice has been done to the appellants, or that there is any substantial error in the record.

The decree of the Circuit Court is affirmed with costs.

*Decree affirmed.*