Mary J. Wallace *et al.* Appellees, *vs.* William H. Greenman *et al.* Appellants.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. Deeds—*whether absolute deed was given as a mortgage depends on intention of parties—evidence.* In a suit to have an absolute deed declared a mortgage the ultimate and essential point to be determined is the intention of the parties when the instrument was executed, and the court, in considering the question, is not restricted to any particular kind of evidence, but any matters which tend to prove the real intention and understanding of the parties and the true nature of the transaction may be considered.

2. Same—*when a deed absolute on its face will be presumed to have been a mortgage.* Where the grantor, at the time of making a conveyance, is indebted to the grantee and the note evidencing the indebtedness is retained by the grantee the debt is not satisfied by the conveyance, and until the contrary is shown the presumption is that the instrument, though a deed absolute on its face, is a mortgage, whether or not the transaction was profitable to the grantee.

3. Laches—*when party is not guilty of laches in having deed declared a mortgage.* Heirs filing a bill to have a deed declared a mortgage cannot be charged with *laches* where the bill was filed within two years after the death of their ancestor, whom they allege to have been the owner of the equity and who lived only a few months after the deed was made, and where one of the complainants, within a few months after the death of the ancestor, filed an affidavit of interference with the registrar of titles.

Appeal from the Circuit Court of Cook county; the Hon. Hugo M. Friend, Judge, presiding.

S. C. IRVING, for appellants.

WILLIAM H. KATT, and WARREN B. WILSON, for appellee Myrtle M. Whittaker.

GURDON WILLIAMS, and P. R. BOYLAN, for other appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

In August, 1920, Mary J. Wallace (formerly Mary J. Whittaker) and her five children, all of whom were heirs of Herbert Whittaker, deceased, son of Mary, filed their bill in the circuit court of Cook county to declare a deed to an apartment building absolute on its face to be a mortgage and to redeem therefrom, and for partition. At the time the deed in question was made the title to the property was in the mother of Herbert Whittaker. The bill alleges that Whittaker was the equitable owner thereof but had deeded the property to his mother as security for advancements made to him; that on April 8, 1918, the deed here sought to be declared a mortgage was executed by Mary J. Whittaker and was delivered to the appellants on April 9 and by them returned on April 11 to Whittaker, who recorded it on that day. The bill alleges that the deed was executed at the request of Whittaker. He died in August, 1918, leaving Myrtle M. Whittaker, his widow, but no child or children or descendants of such. On October 1, 1918, Myrtle M. Whittaker, for a consideration of $1000, quit-claimed her interest in the premises to the appellants. She was for that reason made a defendant to the original bill both in her personal capacity and as administratrix of the estate of Whittaker. She was served by publication and later entered her appearance and asked leave to file a cross-bill, setting up that the quit-claim deed was procured from her by the appellants through fraud and misrepresentation, and praying that the same be canceled and set aside. The

bill also alleged that Mary J. Wallace (formerly Whit-
taker) and the five brothers and sisters of Herbert Whit-
taker were entitled to one-half of the property; that by the
deed of Myrtle M. Whittaker, if valid, she conveyed only
her interest in the premises as the widow of Herbert Whit-
taker, amounting to one-half thereof. These interests were
conceded by the bill to be subject to the lien of certain mort-
gages existing against the property at the time of the death
of Whittaker and a lien for the sum of money advanced by
the Greenmans to him. By Myrtle M. Whittaker's cross-
bill she alleges that she, as the widow of Whittaker, is the
owner of one-half the premises subject to the incumbrances
referred to. The appellants answered, denying the allega-
tions of the bill and cross-bill and claiming that the deed
was a purchase outright of the property for sums of money
advanced to Whittaker.

·Before the filing of the bill, Mary J. Whittaker, the
mother of Herbert Whittaker, married one Wallace, and
during the pendency of the bill she died leaving a will, by
which she made certain provisions for her husband and left
all of her real estate to the five brothers and sisters of
Herbert. Her husband renounced under the will, claiming
dower interest in her estate, but also died during the pend-
ency of this suit.

It may be stated that if the record sustains the bill, one-
half of this property belongs to the complainants subject
to the various incumbrances thereon. If the cross-bill be
sustained, Myrtle M. Whittaker is owner of the fee to the
remaining one-half and dower in the balance, subject to the
incumbrances shown on the accounting, which, as we under-
stand the position of the parties, are correct as to amount.

The cause was referred to the master in chancery, who
found the issues for the complainants in the original bill
and recommended a decree declaring Herbert Whittaker to
have been the equitable owner of the property when the
deed from Mary J. Whittaker to the Greenmans was made

and that said deed should be decreed to be a mortgage. The master also recommended a decree refusing to set aside the quit-claim deed of Myrtle M. Whittaker as having been obtained by fraud and misrepresentation. On hearing on exceptions the chancellor entered a decree in all things confirming the report of the master except his recommendation concerning the quit-claim deed of Myrtle M. Whittaker. As to this the chancellor decreed that the prayer of her cross-bill be granted, ordered an accounting, and re-referred the cause to the master for that purpose. On July 1, 1925, the court entered the final decree in the cause, confirming the master's supplemental report on re-reference as to accounting, wherein he found that the appellants were chargeable with moneys received by them as rentals from the real estate for the period from October, 1918, to September 30, 1924, with interest thereon, amounting in all to $22,731.50, and that they were entitled to be credited with amounts disbursed by them in up-keep and maintenance of the property and with amounts advanced by them to Herbert Whittaker in his lifetime, with interest on such disbursements and advancements, all amounting to the sum of $35,476.62. The decree finds that there is therefore a balance due the appellants of $12,745.12, with interest from September 30, 1924, and awards to the appellants a lien on the premises for that amount, subject to further accounting as to receipts and disbursements subsequent to September 30, 1924. The decree also finds that the appellants should be credited with the sum of $1000 which they had paid Myrtle M. Whittaker, with interest thereon, all of which on September 30, 1924, amounted to $1359.33, which amount, with interest at five per cent from the last named date, was decreed to be a lien upon the interest of Myrtle M. Whittaker in the premises. The decree awarded partition in accordance with the prayer of the bill.

The questions involved in the case are, whether the deed to the appellants of April 8, 1918, was in effect a·

mortgage, and whether the quit-claim deed of Myrtle M. Whittaker should be set aside as procured by fraud and misrepresentation.

The record in this case contains more than 1900 pages, and consists of the testimony of a large number of witnesses concerning the dealings of the parties. The undisputed facts in the case substantiate the allegations of the bill that Mary J. Whittaker (later Wallace) held title to the property for her son, Herbert, and as security for loans. The master found, and we are convinced that the preponderance of the evidence shows, that she transferred it to the Greenmans at the request of Herbert. The evidence also tends to show that Herbert and the appellants were friends and had been acquainted for a number of years; that sums of money amounting to $3000 were prior to April 8, 1918, when the deed was made, advanced by Greenman to Herbert, portions of which were represented by notes signed by Herbert and his mother; that these notes were not paid and were not canceled or delivered up to Herbert after the deed was made; that on the date of the making of the deed a further sum of $860 was given to Herbert, which the master finds was used to pay off certain incumbrances against the property. After the making of the deed the title was registered under the Torrens system, the certificate showing the title to be in the Greenmans, which certificate, however, was retained by Herbert and found among his papers after his death. The deed bore one dollar in revenue stamps, and recited that it was for $10 and other valuable consideration.

Further evidence offered by the appellees tending to show that the transaction was a mortgage and not a deed is as follows: The larger portion of the money received by Herbert Whittaker from the Greenmans went back into the property in the payment of taxes and principal and interest on mortgages. The last advancement to him of $860 was on that day deposited by him in the Southwest Trust

and Savings Bank, to apply on accruing principal and interest notes, secured by a trust deed on these premises. Whittaker, after the making of the deed, remained in possession of the property, collected the rents and managed the property, and the evidence does not sufficiently show that he ever accounted to the Greenmans for the rentals. Of the total of $3860, of which $3000 was advanced to Whittaker before April 8, 1918, $2900 was represented in notes which the Greenmans took and retained uncanceled and produced on demand at the trial. The record shows that the Greenmans, before demand was made for these notes, denied on the witness stand the existence of any evidence of indebtedness. None of the notes were due at the time the deed was given and some of them were not due when Whittaker died. The evidence further shows that after the death of Whittaker his wife took possession of the property and collected the rent until she quit-claimed to the Greenmans; that immediately after receiving a quit-claim deed from her Greenman took over the property and managed the same, and from that day on kept detailed memoranda of his accounts having to do with the operation of the building, making a charge for his own services in the care of the building and a further charge for the collection of the rents. These premises were under a first and second mortgage. As the second mortgage notes fell due after the death of Whittaker Greenman took them up and retained them uncanceled and used them as collateral security for other obligations. They were uncanceled at the time of the trial, as was the first mortgage. The evidence also shows by four different witnesses that subsequent to the death of Whittaker Greenman had on different occasions stated that his interest in the property had to do only with the indebtedness of Whittaker to him.

The evidence furnished by Myrtle M. Whittaker, cross-complainant, tends to show that the Greenmans claimed to her, after her husband's death, that they owned the prop-

erty; that she did not know what the facts were, and that while she had the assistance of an attorney, he was not acquainted with the facts and therefore could not advise her. She stated that she knew nothing about her husband's business or about the facts shown on the trial relative to the nature of the deed given to the property by Mary J. Whittaker, mother of her husband. She further testified that her husband had just recently died; that she had illness in the family, and that Greenman was persistent in trying to get her out, and told her that while he owned the property he would pay her $1000 to get out. The appellants denied these allegations, claiming in their testimony that the transaction was a *bona fide* sale. The decree found against them, and we are of the opinion that we would not be justified in holding that the findings of the chancellor are against the preponderance of the evidence.

There is much evidence to support the decree. Greenman, by his statements made to four witnesses, did not claim to own the property. Further, upon receipt of the $860 when the deed was made, Herbert Whittaker took the same and used it to pay off accruing interest and part of the principal of one of the mortgages against the property. Such a thing is wholly inconsistent with the idea of purchase and sale. Certainly it could be of no interest to Whittaker to pay off the mortgage if he had sold the property, and especially would he not be expected to use a part of the purchase price to pay off such lien. There could be no reason for securing that sum from the purchaser, as the latter could have attended to that matter.

It would serve no useful purpose to discuss at length the testimony contained in this long record. We are convinced that it justifies the findings of the master in chancery and the decree of the chancellor.

Few propositions of law involved in the case are disputed. That which equity seeks as the ultimate and essential point to be determined in a case of this character is the

intention of the parties when the instrument purporting to be a deed absolute was executed. The court, in considering that question, is not restricted to any particular kind of evidence, but those matters which tend to prove the real intention and understanding of the parties and the true nature of the transaction may be considered. *Totten* v. *Totten,* 294 Ill. 70.

The facts in this case are aided by the presumption long existing in this State, that where the grantor is indebted to the grantee at the time of the conveyance and the note evidencing such indebtedness is retained by the grantee, such indebtedness was not satisfied by the conveyance, and, until the contrary is shown, the presumption is that the instrument, though a deed absolute on its face, is a mortgage; and this applies whether the transaction was one profitable to the grantee or not. *Sutphen* v. *Cushman,* 35 Ill. 186.

The appellants urge that the appellees are chargeable with *laches.* The deed was made in April, 1918. Herbert Whittaker died in August of that year. The suit was instituted in August, 1920,—a few days less than two years after the death of Herbert. Mary J. Wallace filed in the registrar's office on December 2, 1918, an affidavit known as an affidavit of interference. We are of the opinion that under the circumstances of this case, as shown by the evidence, the period which elapsed prior to the filing of the bill was not sufficient to establish *laches.*

Complaints are made of errors of the court in the admission and rejection of testimony. We are of the opinion, however, on examination of the record, that no reversible errors were committed in that regard.

The chancellor did not err in decreeing the relief prayed in the bill and cross-bill, and the decree will therefore be affirmed.

*Decree affirmed.*