W. S. Chilvers, Conservator of the Estate of Myron K. Brunson, Appellant, v. Walter Huenemoerder et al., Appellees.

Gen. No. 7,953.

Opinion filed December 4, 1928.

BUNGE, GROTEFELD & BUNGE and CHARLES HUDSON, for appellant.

LITSINGER, HEALY & REID, BENJAMIN B. MORRIS, SHERMAN C. SPITZER and THOMAS J. HOBAN, for appellees.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellant, as conservator of the estate of Myron K. Brunson, filed a bill in the circuit court of DuPage county, setting forth that his ward, Myron K. Brunson, was a bachelor, 75 years of age, and the owner of certain real estate in the village of Downers Grove; that for some 20 years he had been employed in the business of house moving and well drilling; that prior to 1924, he had been active in business, efficient and careful; that about the year 1924 he began to show signs of advanced age, was forgetful and indifferent as to business matters and that his condition grew worse; that appellant "is informed and believes that in the spring of the year A. D. 1927, Daniel C. O'Connell and Walter Huenemoerder, doing business as Fort Dearborn Build-

ers, of the City of Chicago, Cook County, Illinois, did through fraud, misrepresentation and undue influence, induce said Myron K. Brunson, who was then 74 years of age, a bachelor, living alone, seriously ill and in a mental and physical condition which rendered him wholly incapable of tending to his matters of business, to sign a contract for the construction of a large flat building''; that appellant ''is informed and believes that the building contemplated and which has been partially constructed on said premises should not cost more than $95,000 to build complete''; that at the time of the signing of said contract, said above-mentioned persons, hereafter referred to as Fort Dearborn Builders, ''were insolvent and hopelessly involved financially''; that on the 27th day of June, A. D. 1927, said Fort Dearborn Builders, ''through fraud, misrepresentation and undue influence, induced Myron K. Brunson to execute a trust deed, dated June 27, 1927, * * * and to execute and deliver to them the bonds mentioned in said trust deed, aggregating the sum of $100,000; that all said bonds and trust deeds, your orator is informed and believes, were delivered by * * * Fort Dearborn Builders, to the Heitman Trust Company,'' and that ''its officers, employees and agents, were at the time acquainted with said Daniel C. O'Connell and Walter Huenemoerder, trading as Fort Dearborn Builders, and accepted said trust deed, bonds and other documents, with full knowledge of the financial condition and general reputation of the said * . * * Fort Dearborn Builders, and with full knowledge of the circumstances of said transaction, and the contract between Myron K. Brunson and the said builders; that the execution and delivery of said above mentioned trust deed, bonds, etc., were obtained from said Myron K. Brunson upon the fraudulent misrepresentation of the * * * Fort Dearborn Builders, to the effect that the money secured from the sale of the mortgages was to be used to pay the cost of the con-

struction of the said building and * * * that no
commissions for the negotiation of the said mortgages
were to be charged to said Myron K. Brunson, but
that the full face value of said mortgages were to be
used to pay the cost of the construction of the build-
ing''; that said Fort Dearborn Builders ''also fraud-
ulently induced Brunson to execute and deliver to them
additional bonds aggregating the sum of $25,000, being
part of the $100,000 mentioned in the above trust deed,
which were to be subrogated to $75,000 of the above-
mentioned bonds, and which last-mentioned bonds your
orator believes were obtained by Daniel C. O'Connell
and Walter Huenemoerder for their own personal use,
and that they have negotiated said bonds at tremen-
dous discounts and have appropriated the moneys
received therefor to their own private use; that said
Fort Dearborn Builders thereafter on July 26, 1927,
procured the said Brunson to execute a trust deed se-
curing notes aggregating $2,306.25''; and also, ''by
the same fraudulent misrepresentations and undue in-
fluence, caused said Myron K. Brunson to execute and
deliver to them a third mortgage trust deed * * *
securing notes aggregating the sum of $31,500, and to
deliver the bonds secured thereby.''

Said bill further alleges that appellant ''is informed
and believes that the Heitman Trust Company, a cor-
poration, has made certain payments on said loan, the
exact amount of which is unknown to your orator, but
that your orator is informed and believes that the ad-
vancements amount to about $50,000; that a portion of
said $50,000 was obtained by said * * * Fort Dearborn
Builders, by fraudulent affidavits and bogus waivers,
said sums so obtained they have also appropriated to
their own personal use; * * * that he is informed
and believes that said Heitman Trust Company, a
corporation, claims the sum of $11,000 as commissions
and expenses in advance to make said mortgage of
$75,000, and that said Heitman Trust Company, a cor-

poration, has with it on deposit approximately the sum of $12,000, undisbursed, in said loan"; that the Fort Dearborn Builders "by fraudulently misrepresenting to said Myron K. Brunson that they were unable to obtain advancements on said first mortgage induced said Myron K. Brunson to make a further advancement to them of approximately $8,000 in cash, which said Builders agreed to return to said Myron K. Brunson but which they failed, neglected and refused to do, and in order to obtain said $8,000 the said builders, through fraudulent misrepresentation induced said Myron K. Brunson to mortgage and dispose of all the remainder of his property, and that he is now destitute and has no money with which to complete said building, nor any money for the necessaries of life. * * *"; that said building has been partially erected; that there are now outstanding more than $20,000 in unpaid accounts, and that it will require approximately $25,000 to complete said building; "that said Heitman Trust Company refuses to make any further payments on said loan, and that the Fort Dearborn Builders have abandoned and refuse to complete said building"; that appellant is informed and believes that said Fort Dearborn Builders "have negotiated the above trust deeds and notes, and have obtained thereon approximately the sum of $47,000, which they have appropriated to their own personal use."

Said bill named as parties defendant said Fort Dearborn Builders, Heitman Trust Company, Lake View Trust & Savings Bank, "unknown owners and holders of the notes and bonds secured by" the trust deeds mentioned, and Chicago Title & Trust Company, and prayed "that the above mentioned mortgages or trust deeds be vacated and set aside and be declared to be absolutely null and void; that the notes and bonds secured by said trust deeds be also declared null and void; that the holders of the same be decreed to surrender them for collection; that the contract between

said Myron K. Brunson and Daniel C. O'Connell and Walter Huenemoerder, doing business as Fort Dearborn Builders, * * * be decreed to be surrendered by said builders and canceled, and that the same be decreed to be absolutely null and void; that an account-ing be taken in this behalf by this honorable court, and that the equities of the parties hereto may be ascer-tained, and that your orator may have such other and further relief as to the court may seem meet."

To said bill appellees Heitman Trust Company and Chicago Title & Trust Company filed demurrers, gen-eral and special, which were sustained and, the com-plainant electing to abide his bill, a decree was entered dismissing the same. To reverse said decree, this ap-peal is prosecuted.

The question here for determination is whether, on the allegations of the bill, the court erred in sustaining said demurrers.

The bill disclosed that the contract between Brunson and the Fort Dearborn Builders was executed prior to the appointment of said conservator. While the bill disclosed that the contract had been partially per-formed and the consideration therefor partially paid, there is no allegation of restoration or offer therefor.

Cahill's St. ch. 86, ¶ 15, provides: "Every contract made with an idiot, lunatic or distracted person before such finding, or with a drunkard or spendthrift made after the application for the appointment of a con-servator, may be avoided, except in favor of the person fraudulently making the same."

Contracts therefore, made with an insane, feeble minded or distracted person, prior to a judicial finding, are voidable and not void. *Burnham v. Kidwell*, 113 Ill. 425–428; *Paulen v. Springfield Consol. Ry. Co.*, 166 Ill. App. 382–383; *Jordan v. Kirkpatrick*, 251 Ill. 116–120.

As said building had been partially constructed and partially paid for, it would be inequitable to cancel

said trust deeds and to declare the bonds secured thereby null and void, without restoration on the part of Brunson, there being no allegations that Heitman Trust Company was connected with the alleged fraud and misrepresentation.

It is well settled that a party to a contract, who seeks to rescind it on account of fraud practiced on him, must tender back what he has received under the contract, so that the other party may be placed in the same position in which he was before the contract was entered into. *Huiller v. Ryan,* 306 Ill. 88, citing *Brady v. Cole,* 164 Ill. 116; *Hansen v. Gavin,* 280 Ill. 354; *Wenegar v. Bollenbach,* 180 Ill. 222.

The allegation of fraud and of the knowledge of Heitman Trust Company with reference to the transaction in question is made on information and belief. Such allegation is not sufficient on which to base a decree setting aside said trust deeds and declaring the bonds secured thereby null and void, without an offer of restoration, and the court did not err in so decreeing. *Scanlan v. Cobb,* 85 Ill. 296; *Burnham v. Kidwell,* 113 Ill. 425–429; *Eldredge v. Palmer,* 185 Ill. 618–620; *Ronan v. Bluhm,* 173 Ill. 277–287; *Jordan v. Kirkpatrick,* 251 Ill. 116–120.

It will also be observed from an examination of said bill that the charges of fraud and misrepresentation are on information and belief only. This is not sufficient. *Murphy v. Murphy,* 189 Ill. 360–365; *Grabarski v. Stankowicz,* 179 Ill. App. 45–47; *Smith v. Brittenham,* 98 Ill. 188. In *Murphy v. Murphy, supra,* the court at page 365 says:

" 'In alleging fraud, it is well settled, both at law and in equity, that the mere general averment, without setting out the facts, upon which the charge is predicated, is insufficient. * * * It is essential that the facts and circumstances which constitute it (the fraud) should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what

he is called upon to answer.' (9 Encyc. of Pl. & Pr. pp.686, 687; *Brooks v. O'Hara,* 8 Fed. Rep. 529; *Jones v. Albee,* 70 Ill. 34; *Klein v. Horine,* 47 id. 430.)  * * * 'A mere statement that the plaintiff is informed, or is informed and believes, puts in issue only his information and belief, and not the truth or falsity of the facts thus referred to.' " (*Walton v. Westwood,* 73 Ill. 125; 3 Encyc. of Pl. & Pr. p. 363.)

There are no facts set forth on which the charge of fraud and misrepresentation is based in connection with the procuring of the contract with Brunson for the erection of said apartment. The only allegation tending to show that said contract should not have been entered into is that, at the time of entering into the same, Brunson was not physically and mentally capable of transacting business. There is no allegation that the contract was unfair or unreasonable.

Another charge in the bill is that the Fort Dearborn Builders procured said bonds and trust deed from the said Brunson on the understanding that no commissions would be charged for the negotiation of the mortgages, but that the full face value thereof should be used to pay the costs of said buildings. What their intentions were, or what they had represented their intentions to be, was a representation with reference to a future matter, and was not a representation of fact. In *Murphy v. Murphy, supra,* the court at page 364 says:

"The law upon this subject is well settled. Kerr, in his work on Fraud and Mistake, * * * says: 'As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law, nor does it afford a ground for relief in equity.' The foregoing statement of the law has been quoted with approval by this court in the following cases, to-wit: *Gage v.*

*Lewis,* 68 Ill. 604; *People v. Healy,* 128 id. 9; *Haenni v. Bleisch,* 146 id. 262. A false representation, within the meaning of the law, must be a representation as to an existing or past fact, and not merely a promise to do an act in the future. 'A failure to comply with such a promise does not constitute fraud. The general rule is that, to amount to fraud, there must be a willful, false representation as to an existing or past fact.' (*Murray v. R. P. Smith & Sons,* 42 Ill. App. 548.)

"In *Gage v. Lewis, supra,* it was said 'that to warrant an action for a deceitful representation it must assert a fact or facts as existing in the present tense. A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void he has no remedy.' (*Gallagher v. Brunel,* 6 Cow. 346.) Even if at the time when such representations, amounting to a mere promise to do an act in the future, are made, it is not intended to comply with them, it is but an unexecuted intention, which has never been held of itself to constitute fraud."

It is insisted by counsel for appellant that said bill was a bill for an accounting, and should have been sustained as such. An examination of the bill discloses that its real purpose was to set aside said trust deeds and make null and void the bonds secured thereby, and that the accounting prayed for was incidental thereto. As to the parties filing said demurrers, the court did not err in sustaining the same. Appellant had the right to amend his bill, if he had seen fit so to do, but he elected to abide the same, and the court therefore, under the law, was fully warranted in dismissing said bill.

For the reasons above set forth, the decree of the trial court will be affirmed.

*Decree affirmed.*