THE HAVANA NATIONAL BANK, Trustee, Plaintiff and Counterdefendant-Appellee, *v.* AMELIA E. WIEMER *et al.*, Defendants and Counterplaintiffs-Appellants.

(No. 74-171;

Third District—September 30, 1975.

*Rehearing denied October 23, 1975.*

Jay H. Janssen, of Peoria, for appellants.

Larry M. Leiken, of Peoria (David B. Radley, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Amelia Wiemer appeals from a decree of the Circuit Court of Marshall County which ordered her to quitclaim her 310-acre farm to plaintiff, Havana National Bank as trustee, under the terms of a trust agreement executed by defendant and her husband, since deceased. The question presented by this appeal is whether the trust deed and agreement are to be treated as a mortgage.

The basic facts surrounding the transaction between plaintiff and defendant are not disputed. In 1966 the Wiemers contracted to purchase a 310-acre farm in Marshall County for $120,000. Mr. Wiemer subsequently was disabled by a heart attack and was thereafter unable to engage actively in farming. In March of 1967 the Wiemers borrowed $25,000 from the Herget National Bank of Pekin, Illinois, assigning their interest in the purchase contract as security, and in June of 1967 they assigned their interest in the same contract to plaintiff as security for outstanding loans totaling more than $38,000. A $5,000 installment on the purchase contract was due on March 1, 1968, and remained unpaid at the time the Wiemers signed the trust deed and agreement in question. Earlier in 1968 the Wiemers had contracted to sell two acres of the farm for $10,000 and also had applied for a first mortgage loan from an insurance company.

On March 28, 1968, Wilbur Meadows, assistant to the president of plaintiff bank, came to Wiemers' home and secured their signatures on a trust deed and agreement. Mrs. Wiemer's testimony contradicts that of Meadows' concerning conversations and representations made that morning. Both agree that Meadows proposed that the bank, as trustee, take over the management of the farm, that the Wiemers' debts be consolidated, and that, after one year, the bank would attempt to sell the farm, or at least a part that was suitable for subdivision. The same day, after the deed and agreement were signed, Meadows paid the remaining $95,000 purchase price to the sellers of the farm and recorded a war-

ranty deed from the sellers to the Wiemers, and also recorded the trust deed.

Also on the same day plaintiff entered into a "Supplemental Agreement" with Herget National Bank which established the priority of plaintiff's lien for $38,666.70 over Herget Bank's lien for $25,000 and which authorized additional loans under the trust arrangement. Meadows testified that Herget Bank loaned $60,000 of the money paid to the sellers, and the plaintiff bank advanced $35,000, in order to secure title in the Wiemers' name.

The following day the Wiemers signed a note to plaintiff for $40,000 (their prior debt plus interest). In June, 1968, plaintiff and Wiemers jointly executed a first mortgage on 240 acres as security for a loan of $70,000 from the insurance company previously contacted by the Wiemers. The proceeds of that loan were paid into the trust account, and used to repay the $60,000 loan from Herget Bank and part of the $35,000 loan from plaintiff. The Wiemers paid into the trust account the $10,000 proceeds from the previous sale of two acres, and also paid in various other sums from farm operations. When the $40,000 note to plaintiff became due, the Wiemers twice signed six-month extension agreements, both of which stated that the note would be paid from the sale of subdivision property.

Beginning in 1969, plaintiff as trustee advertised the farm for sale, and, in December, 1972, and January, 1973, contracted to sell the farm in two parcels for a total of $154,090. When the Wiemers learned of plaintiff's attempts to sell the farm, they recorded their affidavit notifying prospective purchasers that any sale by plaintiffs would be in violation of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat., ch. 95, § 23.1 et seq.). In order to remove the cloud on title, plaintiff instituted this suit to compel defendant to execute a quitclaim deed to plaintiff.

Because the determinative question before us is construction of the trust agreement and deed, we must set out the relevant provisions of both.

After reciting Wiemers' overdue debt to plaintiff and Herget Bank and the "desire of the parties to arrange satisfaction of said indebtedness in lieu of foreclosure of the liens" of the previously assigned real estate purchase contract, the agreement provided for the Wiemers to execute a deed in trust to plaintiff as trustee, and, if requested by the trustee after payment of the purchase contract debt, to execute another deed conveying the premises to the trustee to perfect title in the trustee. Other provisions may be summarized as follows:

1. To pay off the purchase contract the trustee shall borrow at least $60,000 from Herget National Bank, secured by a first mortgage on the

240 acres used for grain farming, with the trustee entitled to refinance the loan from any other source. Additional money needed shall be borrowed from plaintiff bank, secured by a second mortgage with the same right to refinance.

2. When directed by plaintiff and Herget Bank, the trustee shall sell all or part of the farm, except that no part of the grain farming portion shall be sold to anyone other than the Wiemers for one year.

3. The net proceeds of sale of the grain farming portion shall first be applied to the first mortgage debt (Herget) and next to the second mortgage debt (plaintiff). The proceeds from the other part of the farm shall be paid first to plaintiff to discharge present and future debts, and second to Herget Bank. Any excess after payment of the debts to the banks shall be paid to the Wiemers.

4. After all debts to the banks are paid in full, the trustee shall convey any unsold property to the Wiemers.

5. Plaintiff shall have control of the management, renting and possession of the property, and shall apply net income in the same order as proceeds of sale. (Note: In fact, defendant continued to reside on the farm until the circuit court order was entered, and the trustee leased the farm to Wiemers' former tenant on a crop-share basis.)

The trust deed conveyed the farm to plaintiff as trustee, and granted the trustee full authority to manage, improve, protect, subdivide, sell, convey, donate, mortgage, lease, dedicate or partition the premises, and to deal with the property in all other ways lawfully available to any owner. The deed also provided that the beneficiaries shall have an interest only in the earnings or proceeds from sale, and "such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds * * *."

When defendant refused to give plaintiff a quitclaim deed to perfect title for sale of the farm, plaintiff brought this action to enforce the trust agreement. Plaintiff's position is that the Wiemers voluntarily and knowingly conveyed fee simple title to plaintiff as a means of settling their debts, and that an absolute power of sale was vested in the trustee; therefore, plaintiff is entitled to a decree of specific performance.

Defendant contends that the intent and purpose of the transaction was for the trust deed to be security for the bank loans, so that the deed was in the nature of a mortgage, and, under the Illinois Mortgage and Foreclosure Act, the trustee cannot sell defendant's property except by foreclosure proceedings. Section 1 of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat., ch. 95, § 23) provides:

"That no real estate within this state, shall be sold by virtue of

any power of sale, contained in any mortgage, trust deed or other conveyance in the nature of a mortgage * * * but all such mortgages, trust deeds or other conveyances in the nature of a mortgage, shall only be foreclosed, in the manner provided for foreclosing mortgages * * *."

The trial court, in a written opinion, concluded that the only evidence supporting defendant's contention was the defendant's own testimony that Meadows, at the time of signing, said that the instrument was a mortgage. Meadows denied making such an assertion, and the court held that the parties intended the trust agreement and deed to be carried out according to the express terms of the instruments, including the trustee's power to sell. The trial court also found that all the documentary evidence supported its interpretation. Plaintiff was granted a decree of specific performance.

In *DeVoigne v. Chicago Title & Trust Co.*, 304 Ill. 177, 136 N.E. 498 (1922), a trust deed agreement contained provisions similar to those before us. The trustee was given full power to sell the property, and the beneficiaries' interest was declared to be personal property. The trust agreement also provided for reconveyance if the beneficiaries paid certain obligations within 60 days. After noting that section 1 (par. 23) of the Mortgages and Foreclosure Act was passed in 1879 to prevent sales of the equity of redemption, the court stated: "[N]o scheme or device to evade the statute or circumvent it by providing for a sale depriving the debtor of his equity of redemption will be upheld." (304 Ill. 177, 183.) The court observed that a mortgage need not contain a promise to pay a debt, but, since by definition a mortgage is security for a debt, there must be an existing debt or obligation to be enforced. The supreme court then ruled that the provisions of the deed and trust agreement giving the trustee power to sell were void. See *Quinn v. Pullman Trust & Savings Bank*, 98 Ill.App.2d 402, 240 N.E.2d 791 (1st Dist. 1968).

■■ In Illinois, courts of equity have, from earliest times, looked to the substance, not the form, of a transaction to discern whether a conveyance was absolute or in reality a mortgage. (See, *e.g.*, *Purviance v. Holt*, 8 Ill. (3 Gilm.) 394 (1846); *Darst v. Murphy*, 119 Ill. 343, 9 N.E. 887 (1887).) (Many of the early cases are discussed in *Sutphen v. Cushman*, 35 Ill. 186 (1864).) Contracts "for the purchase or extinguishment of the equity of redemption are always regarded with jealousy by courts of equity." (*Cassem v. Heustis*, 201 Ill. 208, 217, 66 N.E. 283 (1903).) The legislature created a right of redemption from mortgages in 1843 and extended the right to trust deeds in 1879. *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 8 N.E.2d 671 (1937).

■■ In *Burroughs v. Burroughs*, 1 Ill.App.3d 697, 274 N.E.2d 376, 381

(3d Dist. 1971), this court discussed the evidence necessary to establish that a deed absolute should be treated as a mortgage, and, in so doing, Justice Stouder quoted with approval from *Ruckman v. Alwood,* 71 Ill. 155, 159 (1873): "[W]here the transaction is shown to have been meant as a security for a loan, the deed will have the character of a mortgage, without other proof of fraud than is implied in showing that a conveyance, taken for the mutual benefit of both parties, has been appropriated solely to the use of the grantee."

Here the trial court considered testimony describing conversations and events occurring on the day the trust agreement and deed were signed as the primary evidence of the intention of the parties, and found plaintiff's version more persuasive.

Defendant testified that she and her husband were not given time to read the documents before they signed them, and that Meadows said this was really a mortgage. Meadows denied saying that the trust arrangement was a mortgage, and recalled reading and explaining every paragraph of the agreement and deed to the Wiemers. Plaintiff, on appeal, attacks defendant's credibility, pointing to inconsistent testimony about some of the many complicated business transactions in which she cosigned documents with her husband prior to his death. However, we believe the trial court placed undue reliance on contemporaneous statements of the parties.

More than 100 years ago, the Illinois Supreme Court in *Sutphen v. Cushman,* stated:

> "[I]n our researches we have been unable to find any well considered case in which it has been held that an absolute deed should be regarded as a mortgage, from loose declarations of parties made at the time it was executed, touching their intentions or understanding. As pilots of the ship of justice, we think that to guide her course by the headlands of the law, and when these are not visible, then by known rules adopted from the experience of ages, is safer than to turn her adrift amidst the treacherous waves of loose conversation, to be guided only by the imperfect understanding, recollection and statements of witnesses. Her cargo of cases might be lighter when she is guided by the safer rule, but she will be less likely to destroy whatever she comes in contact with by the misapprehension of the pilots on board." 35 Ill. 186, 196-97.

Since that time, statements of the parties at and after execution of the instrument, as well as preliminary negotiations leading up to the transaction, have been held admissible to illustrate the purpose and intent of the parties. (*Kulik v. Kapusta,* 303 Ill. 208, 135 N.E. 402, (1922).)

Similarly courts have taken into account inadequacy of price, relationship of the parties, the appearance of the transaction, and the situation of the parties after the transaction as factors for determining the intention of the parties. (*Burroughs v. Burroughs,* 1 Ill.App.3d 697, 274 N.E.2d 376 (3d Dist. 1971).) In some cases one factor will be a more prominent element than in others. (*Warner v. Gosnell,* 8 Ill.2d 24, 132 N.E.2d 526 (1956).) However, we find no case that relies primarily on statements made by the parties at the time of execution as the basis for determining the purpose of the transaction, and we believe the trial court erred in doing so here.

■■■ Circumstantial evidence pertaining to the transaction may be aided by the presumption that, where the grantor is indebted to the grantee at the time of the conveyance, and the grantee retains the note evidencing the indebtedness, then the indebtedness was not satisfied by the conveyance, and, until the contrary is shown, it will be presumed that a mortgage was intended. (*Wallace v. Greenman,* 321 Ill. 423, 152 N.E. 137 (1926); *Burroughs v. Burroughs,* 11 Ill.App.3d 176, 296 N.E.2d 350 (3d Dist. 1973).) In the case before us plaintiff's witnesses testified that plaintiff bank retained the original of the $40,000 note signed by the Wiemers in conjunction with the trust deed and agreement. Consequently a presumption arises that the trust deed was intended to serve as a mortgage. In general, the burden of proof rests upon the party asserting a deed absolute in form to be a mortgage, and that fact must be shown by clear, satisfactory and convincing proof. (*Warner v. Gosnell.*) Here, however, a presumption arises that a mortgage was intended, and plaintiff had the burden of proving otherwise; the trial court erred in ruling to the contrary.

■■ Illinois courts long ago adopted the rule stated in 4 *Pomeroy's Equity Jurisprudence* § 1195 (5th ed. 1941):

> "If there is an indebtedness or a liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instrument."

*Warner v. Gosnell; Totten v. Totten,* 294 Ill. 70, 128 N.E.2d 295 (1920); *Keithley v. Wood,* 151 Ill. 566, 38 N.E. 149 (1894); 55 Am.Jur.2d *Mortgages* § 58 (1971).

*Pomeroy* noted that this criterion has been established by an overwhelming consensus of authorities and that it furnishes a sufficient test in the great majority of cases. Only when application of this test still leaves a doubt is it necessary to consider other circumstances surrounding the transaction.

In the case before us the Wiemers signed a new note in favor of plaintiff for $40,000 on March 29, 1968, which is conclusive evidence that the prior indebtedness was not extinguished by the trust deed. Meadows testified for plaintiff that the $40,000 note "was a consolidation of the interest and principal due on the note mentioned in the trust agreement * * *. It was a renewal of the prior indebtedness." From this it follows that plaintiff did not take title to Wiemers' farm in satisfaction of prior debts, as claimed, but instead plaintiff obtained the trust deed for the purpose of enhancing the security of their prior loans. As was said in *Sutphen v. Cushman,* the grantee "cannot hold the land absolutely, and at the same time retain the right to enforce the payment of the debt, on account of which it was made * * *. As the deed must be regarded as a mortgage in respect to the indebtedness at the time it was made, it must be regarded in the same manner as to subsequent advances." (35 Ill. 186, 197.) The fact that plaintiff advanced additional sums to pay the seller the balance of the purchase price owed by the Wiemers does not affect the nature of the trust deed previously signed.

■■ Plaintiff argues that, after execution of the trust deed, certain actions of the Wiemers were inconsistent with the theory that the trust deed was in fact a mortgage. For example, the Wiemers signed two extensions of the $40,000 note and also the mortgage to the insurance company, all of which acknowledged the trustee's power to sell. However, we believe these documents also show that plaintiff did not consider defendant's debt to have been extinguished by the trust deed, and thus, although susceptible to conflicting interpretations, they do not overcome the evidence which requires that the trust deed be treated as a mortgage.

■■■ We conclude that the trust deed was in the nature of a mortgage, and, under section 1 of the Mortgage and Foreclosure Act (Ill. Rev. Stat., ch. 95, § 23), defendant's property cannot be sold by plaintiff except by the prescribed foreclosure proceedings. The power of sale contained in the trust agreement was void. (*DeVoigne v. Chicago Title & Trust Co.*). Accordingly, we reverse the decree of the trial court ordering specific performance of the trust agreement.

An additional question remains to be considered. Defendant filed a counterclaim for an accounting which the trial court dismissed for want of equity.

■■ The countercomplaint alleges in effect that, if the trial court finds for plaintiff on the complaint, then an accounting would be necessary to settle the trustee's account. Since defendant's claim for an accounting is incidental to the original cause of action, and since we have held for defendant in the main cause, an accounting is not required. *Chilvers v. Huenemoerder*, 250 Ill.App. 499 (2d Dist. 1928). See also *Webster v. Hall*, 388 Ill. 401, 58 N.E.2d 575 (1944).

■■ Whether defendant has established a right to an accounting independent of plaintiff's cause of action is a question of fact which defendant has the burden of proving. (*Derkers v. Vaughan Co.*, 348 Ill.App. 407, 109 N.E.2d 262 (1st Dist. 1952).) Trustee's reports sent annually by plaintiff to defendant were introduced in evidence and reveal complete statements of account by plaintiff. Defendant does not contest the accuracy of these reports in her brief. We conclude that the finding of the trial court was not against the manifest weight of the evidence, and therefore we affirm the dismissal of the counterclaim.

Reversed in part; affirmed in part.

STOUDER, P. J., and BARRY, J., concur.