THE ILLINOIS TRUST COMPANY OF PARIS, Appellant, *vs.* PHILLIP BIBO *et al.* Appellees.

*Opinion filed December 21, 1927.*

1. PLEADING—*demurrer admits facts but not conclusions.* A demurrer to a bill in equity admits the essential facts stated but not the conclusions averred in the bill, as the legal conclusions from the facts admitted must be determined by the court.

2. MORTGAGES—*when a deed must be held a mortgage—specific performance.* Upon a trial on issues of fact a deed absolute in form, where there is no other writing, will not be held to be a mortgage except upon clear and convincing proof; but where there is a conveyance by deed and a condition of defeasance in a collateral paper showing a trust agreement in which the grantee is, in fact, a trustee or mortgagee the deed must be held a mortgage, and the grantee, a trust company, will not be entitled to specific performance of its contract of sale to a third party and to a decree quieting title as against the interests of beneficiaries under the trust agreement, but its bill disclosing such facts must be dismissed, on demurrer, for want of equity, as a mortgagee can not sell the estate except by foreclosure.

3. SAME—*estoppel cannot be applied to cut off equity of redemption.* As parties cannot, even by express stipulation in a mortgage, destroy or cut off the right of redemption, such right cannot be cut off by application of the doctrine of estoppel.

APPEAL from the Circuit Court of Edgar county; the Hon. WALTER BREWER, Judge, presiding.

TROGDON & DOLE, and O'HAIR, McCLAIN & BRISTOW, for appellant.

A. C. & BEN F. ANDERSON, (GUNN, PENWELL & LINDLEY, of counsel,) for appellees.

Mr. COMMISSIONER CROW reported this opinion:

This case comes here on appeal by complainant from a decree of the circuit court of Edgar county dismissing its bill for want of equity. It purports to be a bill for specific performance and to quiet title to lands purchased by Phillip Bibo at an auction sale of real estate advertised by com-

plainant. The prayer for relief is that Bibo be ordered and directed to pay to complainant the sum of $46,110.08, with interest at the rate of five per cent from the first day of March, 1925, and to accept from complainant a deed of conveyance of the lands described in the bill, and that any and all claims to any right or interest therein of any of the defendants to the bill which in any way encumber the title of complainant be decreed to be of no effect and held for naught; that Fred K. Thayer, and Alma, his wife, and E. M. Woodard, be enjoined from interfering with the title of complainant by virtue of said deed and the trust agreement set forth in the bill, and that the court decree that the terms of the trust agreement are binding upon all the parties signing it; that Bibo be compelled by the decree to perform the agreement to purchase the premises and to pay to complainant the remainder of the purchase price as stated in the bill, with interest thereon from the time the purchase money ought to have been paid to the date of the decree.

The bill is lengthy and only such parts of it will be stated as are deemed necessary, under the contention of appellant, to determine the propriety of the decree upon the facts admitted by demurrer.

Fred K. Thayer and Alma Thayer, his wife, were the owners of the lands described. On July 5, 1922, they executed and delivered to complainant a warranty deed conveying to it, as trustee, all of the lands. On July 10, 1922, complainant and the Thayers entered into a trust agreement in writing, made exhibit "B" to the bill. As a part of the exhibit, and as an agreement between complainant, the Thayers and persons and corporations signing it, appears the following: "We, the undersigned owners and holders of the promissory notes herein described, do hereby certify and declare that the foregoing instrument clearly sets forth and declares the trust under and upon which said real estate is held by said trustee; and we also hereby agree to and do approve, ratify and confirm the same in

all particulars." The agreement was made by the Thayers, parties of the first part, of the State of Mississippi, and complainant, as trustee for the holders and owners of certain promissory notes thereafter described. It recites that the grantee, as trustee, has received a deed dated July 5, 1922, to be filed for record in Edgar county, executed by the Thayers, conveying the lands described in the bill; that the consideration of $42,000 expressed in the deed from the Thayers to the trust company was paid by the legal owners and holders of fifteen promissory notes, numbered from 1 to 15, bearing date July 1, 1922, executed by the Thayers, payable to the order of themselves and by them endorsed and delivered to the trustee for the legal holders thereof, all due two years after their date and bearing interest at seven per cent per annum from date, payable annually at the office of the trustee at Paris, Illinois, with the privilege of paying any amount of principal on any or all of the notes at any time before their maturity, which notes numbered 1 to 14, aggregating $30,000, are secured by a trust deed of even date with the notes to the trustee. The note numbered 15, for $12,000, is secured by a trust deed of the same date to the same trustee, the lien of which is subordinate to that of the trust deed securing the notes numbered 1 to 14, both of the trust deeds being subordinate only to a prior encumbrance held by the Mutual Life Insurance Company, the Trevett-Mattis Banking Company and Almon G. Danforth. The foregoing recitals are followed by the agreement "by all the parties interested herein," that Thayer retain control of the lands and collect the rents and profits therefrom for a period of two years unless the right to collect and retain the rents and profits shall be forfeited by his failure to perform the duties under the circumstances imposed on him by the agreement. Thayer covenants that he will manage the premises and oversee them in a manner consistent with good business management, pay all interest to accrue on the indebtedness, pay

taxes levied against the premises, and not allow them to be sold in default of payment of interest, taxes and assessments. In default of payment the trustee is authorized, at its option, to make the payments, such payments so made by the trustee, with interest, to constitute a lien in favor of the trustee, subject only to the prior mortgage encumbrances set forth in the agreement. Other stipulations in the agreement authorize Thayer to sell the premises, provide for the application of the money received from sales, payment to the trustee of all money derived from sales, and payment to it of costs, reasonable attorneys' fees and other charges; that if the notes aggregating $42,000 shall not have been paid at the expiration of two years or taxes or other charges specified in the agreement shall not have been paid in full, the trustee shall forthwith sell all or any of the lands described not before sold, at public or private sale, at its discretion, delivering valid deeds therefor, the proceeds to be devoted to the payment of mortgage encumbrances, promissory notes and costs and charges of the trust. The agreement further provides that all deeds or other instruments affecting the property shall be executed by the trustee, all money except rents, as before provided for, shall be paid to it, and it shall not be required to commence any suit at law or in equity with respect to the property or the carrying out of the provisions of the trust, "unless requested in writing by certain of the beneficiaries hereunder, who are the legal holders and owners of the fifteen promissory notes, aggregating $42,000, herein described, representing at least two-thirds of said sum, accompanied by a sum sufficient in the judgment of the trustee to cover all costs and charges in connection therewith."

By the agreement the costs, fees and expenses of the trustee are fixed as follows: (*a*) Usual fees for preparing and recording instruments, for abstracts of title, revenue stamps in any transfer, with reasonable commissions and attorneys' fees incurred in pursuance of the trust or in de-

fense of its terms and conditions; (*b*) a fee of $500 for drawing and executing the agreement and acceptance of the trust, the fee covering the two-year period; (*c*) a fee of one per cent on all sums received and disbursed in the event of sale while the trust is in force; (*d*) reasonable compensation for any services rendered by the trustee in the necessary pursuance of the trust not already provided for.

Counsel for appellant say in their brief that the sole question presented for decision is whether the trustee is a mortgagee or the holder of a fee simple indefeasible title to the real estate of Thayer. Their contention is that the trustee is the owner of the fee by virtue of the deed of conveyance and is asserting its right to compel Bibo to accept the deed to the lands purchased by him at the sale made by the trustee and to pay the amount of his bid at the sale, with interest, because not paid within a reasonable time. The contention of counsel for appellees is that the deed from the Thayers to appellant is not to be considered alone but that it must be read in connection with the trust agreement made part of it by reference, and when so considered it must be construed to be security for the payment of a debt, and therefore a mortgage. If the deed and the trust agreement constitute a mortgage the concession of counsel as to the scope of inquiry on this appeal is well made.

In most of the cases the question whether a deed absolute in form is a mortgage arose upon evidence introduced at the trial on the issues presented. Here it is presented by averments of the bill charging an absolute conveyance in fee simple and a separate agreement defining the purposes of the deed. All being set out at large in the bill they must be construed together. The demurrer admits the essential facts stated but not conclusions averred in the bill. Legal conclusions from the facts admitted must be determined by the court. Upon a trial on issues of fact a deed absolute in form, where there is no other writing, will not be held to

be a mortgage unless the parol evidence showing it to be a mortgage is clear and convincing. If the parol evidence leaves in doubt the character of the conveyance as a mortgage the doubt must be resolved in favor of the absolute character of the deed. There is no conflict among the authorities as to this rule, but where there is a conveyance by deed and a condition of defeasance in a collateral paper, any doubt whether the transaction is a mortgage will be resolved in favor of its character as a mortgage. (*Keithley* v. *Wood,* 151 Ill. 566.) This rule obtains generally in the different States and in the Supreme Court of the United States.

In the brief of counsel for appellant it is said that the contract of defeasance was not under seal, and that the legal effect of the deed will not be impaired by it for that reason. But the exhibits to the bill disclose that the agreement declaring the trust under which the deed is held was under seal of the Thayers, and its acceptance by complainant was attested by its corporate seal. The rule stated in *Fitch* v. *Miller,* 200 Ill. 170, cited by appellant, does not apply. That rule is, that a mortgage created by an absolute deed to the mortgagee, and taken in connection with a contract of defeasance not under seal, is regarded as an equitable mortgage in contra-distinction from a legal mortgage. The trust agreement in this case to re-convey, being under seal, meets the requirement of the *Fitch case* and of the authorities there cited, that it must be of as high a character as the deed.

Section 12 of the Conveyance act of 1845 (Rev. Stat. 1845, p. 105,) provided: "Every deed conveying real estate, which, by anything therein contained shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." In the revision of 1874 that section was re-enacted, omitting the words "by anything therein contained." In the case of *Caraway* v. *Sly,* 222 Ill. 203, the
328—17

section quoted as it now stands was made the basis of the decision as to the effect of the deed there asserted to have been, in fact, a mortgage. That case is assumed by appellant to be authority supporting its contention. We do not so understand it. As in this case, the question arose and was decided upon averments of the bill admitted by demurrer. The substance of the bill was that complainant was indebted for money borrowed, and to secure it complainant conveyed to defendant the real estate described in the bill; that the grantor was in impecunious circumstances, and that it was agreed that he should be permitted to redeem by paying the indebtedness "when he became able to do so," and that he was in possession of the land. We held that section 12 of chapter 95 (the Mortgage act) was not applicable because the averments of the bill did not disclose the characteristics of a mortgage as therein provided. On that point it was said: "The fact that there is an agreement to re-convey does not render a conveyance a mortgage, but the essential things are the existence of a debt and the intention to secure its payment.—*Rue* v. *Dole,* 107 Ill. 275; *Freer* v. *Lake,* 115 id. 662; *Burgett* v. *Osborne,* 172 id. 227; *Heaton* v. *Gaines,* 198 id. 479; *Gannon* v. *Moles,* 209 id. 180."

In *Fitch* v. *Wetherbee,* 110 Ill. 475, the court said: "Without seeking for any general definition of a mortgage, it is sufficient for the present discussion to say that a mortgage is any conveyance of an estate to secure a debt or the performance of some act, such as the payment of money or the furnishing of indemnity, subject to be defeated by the performance of the act agreed to be done."

In *Keithley* v. *Wood, supra,* the question now under consideration was elaborately examined, after a rehearing allowed, in the light of principle and authority. Wood and wife executed and delivered to Keithley a warranty deed in statutory form conveying two tracts of land. At the same time Keithley executed and delivered to Wood an agreement, not under seal, to re-convey part of the land

provided Wood should first pay him $137.50, the agreement to be void after December 31, 1889. Wood filed a bill in equity to redeem, alleging that the memorandum and deed constituted a mortgage. The circuit court found and decreed that the execution of the deed and the written agreement constituted one transaction and were intended as security for re-payment of the indebtedness of Wood to Keithley; that Wood was not deceived into signing the deed but knew it to be a deed with a contract to re-convey upon payment of the amount stated. The only parol evidence was that of Wood and Keithley, Wood testifying that the transaction was security for a loan and Keithley that it was a sale of the land. On the facts stated this court held: "Where land is conveyed in fee by a deed with covenants of warranty and there is no condition or defeasance either in the deed or in a collateral paper, and parol evidence is resorted to for the purpose of establishing that the deed was given as a mortgage, such evidence must be clear and convincing, otherwise the presumption that the deed is what it purports upon its face to be must always prevail." In support of the conclusion that the transaction constituted a mortgage it was said, quoting from Pomeroy's Equity Jurisprudence: "A general criterion, however, has been established by an overwhelming consensus of authorities, which furnishes a sufficient test in the great majority of cases, and whenever the application of this test still leaves a doubt, the American courts, from obvious motives of policy, have generally leaned in favor of the mortgage. This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being

discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to re-convey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instruments."

From the instruments executed, it appears in this case that the deed was intended only as security for the payment of money, as the Mortgage act, and decisions avowedly based upon equitable principles, require. The admitted facts show that Thayer was to receive from the trustee a re-conveyance of the lands when the debt should be paid and that all money remaining in the hands of the trustee after payment of the indebtedness should be paid over to him. The trust agreement declares the circumstances that will defeat the deed if the things required to be done shall be done. If not done, the right to redeem from the mortgage of which it is a part may, as a matter of law, be foreclosed in equity for breach of the conditions by the grantor therein stated. No conditions usually found in trust deeds in the nature of a mortgage are omitted. The consideration stated in the deed was paid by the legal holders of the notes, constituting a debt secured by it to which the trust agreement refers. The title is held for the benefit of the legal holders of the notes. The trust shall only run until the notes are paid and satisfied. When the notes are paid the trust shall cease and the remainder of the money shall be paid over and the real estate conveyed to Thayer. If the transaction were a sale these provisions would have no place in it. We are of the opinion that the deed and trust agreement constitute a mortgage on the lands described in them.

It is said in the brief of appellant that the right of redemption in this case is purely an equitable estate and that a court of equity will not protect and enforce it unless

equitable considerations require it to do so, citing *Fitch* v. *Miller, supra*. In that case the redemptioners, heirs-at-law of the grantor, were seeking to have a court of equity aid them to redeem from a sale made under an equitable mortgage. They were seeking equitable relief. Here complainant is asking a court of equity to aid it in a transaction forbidden by law,—a sale of real estate under a conveyance which in fact and in law is a mortgage, without proceeding to foreclose in the manner provided by law for the foreclosure of mortgages. No real estate shall be sold to satisfy any mortgage, trust deed or any conveyance in the nature of a mortgage except in pursuance of a judgment or decree of a court of competent jurisdiction. (Smith's Stat. chap. 95, sec. 23.)

But it is said by counsel for appellant that if they are wrong in their other contentions the doctrine of estoppel applies, and therefore appellees are precluded from resisting the relief sought by the bill. If a mortgagor may be estopped to assert his right to redeem and to insist on the orderly procedure for the foreclosure of his equity of redemption, under the facts of this case section 23 of the Mortgage act, quoted above, comes to naught. "Parties cannot, even by express stipulations in a mortgage, destroy or cut off the right of redemption." (*Williams* v. *Williston*, 315 Ill. 178.) It is obvious that if they cannot cut off the right by express stipulation they cannot do so by estoppel. Appellant knew, and everyone connected with the transaction knew, that the attempt to cut off the right of redemption was in violation of positive law. There is therefore no ground for the estoppel contended for.

The decree of the circuit court dismissing the bill is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*