CHARLES Q. BURROUGHS, AS CONSERVATOR OF LEAN BURROUGHS, Plaintiff-Appellant, *v.* MATT BURROUGHS *et al.,* Defendants-Appellees.

(No. 70-216;

Third District—October 14, 1971.

Froehling & Taylor, of Caton, (Ralph Froehling, of counsel,) for appellant.

Crissey, Kost & Downs, of Lewiston, (Lachlan Crissey, of counsel,) for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Fulton County granting the motion of Matt Burroughs and Robert Burroughs, Defendants-Appellees, for judgment in their favor made at the close of the evidence introduced by Plaintiff-Appellant, Charles Burroughs, Conservator of the estate of Lena Burroughs, incompetent. This action originally commenced by Lena Burroughs was brought in three counts, the first sought to have a deed absolute in form declared to be a mortgage, the second and third counts sought recession on the basis of fraudulent misrepresentation and the violation of a fiduciary duty respectively. After this case was filed but prior to the hearing, Lena Burroughs was judged to be incompetent, Charles Burroughs, her son, was appointed her conservator, and as such conservator was substituted as party plaintiff.

In April, 1967, Lena Burroughs a widow, was the owner of 240 acres of farm land in Fulton County Illinois, the land being farmed by her son Charles Burroughs. The farm had been acquired by Lena Burroughs' husband in 1957 and he did in 1958. There had been no mortgage on the premises since its acquisition by the Burroughs.

In 1961 Lena Burroughs executed a coal lease on the premises which provided for advance royalty payments of $100,000. Such advance royalty payments were payable at the rate of $3000 per year for the first nine years of the lease and the balance of $73,000 was due at the end of the tenth year. The coal company had the option to terminate its lease at any time. At the time of the hearing the annual payments for nine years totaling $27,000 had been paid and the final payment of $73,000 would be due March 1, 1971, if the option were to be exercised by the company. According to a representative of the coal company the coal seams underlaid about 55 per cent of the farm in the northwest corner thereof.

Two real estate appraisers testified that in their opinions the value of the 240 acre farm in April 1968, was $71,000 and $78,000 respectively. Such appraisals did not include any valuation attributable to the coal lease.

In April, 1967, Lena Burroughs in order to assist her son Charles, who was in financial difficulties, joined with Charles in executing a mortgage and note secured thereby to the Canton State Bank in the sum of $45,000, the mortgage included the 240 acre farm and two homes owned by Charles. Additionally Charles' farm machinery was included as security. The proceeds of this loan went solely to Charles or for his benefit. The note required that $5,000 on principal plus interest be paid annually for the next three years with the final balance of $30,000 due April 26, 1971.

When April 26, 1968, approached, Charles did not have sufficient funds to make the payment then due. The amount due at the time was approximately $5,200, the bank having received $3,000 from the coal company as its annual payment (the coal lease also had been assigned as security for the loan.) Additionally Charles had $2,000 but the bank refused to accept anything less than the full payment due and insisted that the payment be made or foreclosure proceedings would be instituted.

In April and May of 1968, Lena Burroughs was 85 years old (87 years of age at the time of trial) and was hard of hearing. As indicated earlier Lena was adjudged incompetent prior to the hearing in this litigation and resided at a nursing home. Such incompetence raised the question of her competency to testify as a witness and defense counsel initially objected to her testimony but later withdrew the objection.

From the testimony of Lena Burroughs and her son Charles it appears that during the last part of April or the early part of May, 1968, they visited relatives in Washington, Illinois for the purpose of getting a loan but were unsuccessful in this regard. On the way back to Canton they stopped to see Matt Burroughs the defendant, a nephew of Lena's

deceased husband. Charles testified that the purpose of going to see Matt Burroughs was to see about a loan to which response the court sustained an objection, it being the position of defendants' attorney that only conversations could be testified to. Although both Lena Burroughs and Charles refer to this initial conversation with Matt Burroughs their account of the conversation is sparse. It appears that they talked over their problems with Matt Burroughs and that he said "give me a few days to think it over", "I'll let you know".

A few days later Matt Burroughs came to Canton to Lena's home. Charles was there. They had some conversation. There was testimony by Charles that "we just talked about what the loan would be" which was objected to, and objection was sustained. That day at Lena's home, Matt simply said, "I think I'll take the whole mortgage up; just take the whole thing off of your hands". Thereafter, the three of them proceeded to the Canton State Bank.

At the bank the three Burroughs met with bank officials. At the time Matt Burroughs had two checks totaling the amount of the loan. The bank accepted the checks giving a receipt therefor but declined to do anything else until the checks had cleared. According to Lena and Charles Burroughs they inquired at the time whether or not they should have an attorney but according to Charles they were advised by C. C. Mason, the bank officer and Matt Burroughs that they would not need an attorney. There is evidence tending to show that at this meeting James Van Sickle, the bank's attorney, was present and was instructed with regard to the preparation of necessary documents although it does not appear that either Lena or Charles Burroughs had any idea what the documents would be. The parties then returned to Lena's home and had further conversations which included the reiteration as in a former conversation that Charles could buy the property back when he had the money. It also appears that during this conversation arrangements were made for Charles to continue farming the farm for the next year.

Two days later Matt Burroughs returned to Lena Burroughs' home and took her to the Canton Bank to finish the details. According to Lena, Charles was not there at the time and when she asked that he accompany them Matt declined.

According to Lena Burroughs' testimony she signed many documents at the bank including a deed although a deed is the only document about which she had any knowledge either signed by her or by anybody else. From the exhibits it appears that a warranty deed dated May 13, 1968, recorded May 15, 1968, was signed by Lena Burroughs conveying the property to Robert Burroughs (the son of Matt Burroughs). Another

exhibit dated May 13, 1968, recorded May 15, 1968, was the assignment of the mortgage by the Canton State Bank to Robert Burroughs, the assignment reciting that the note for $45,000 secured by the mortgage had also been assigned to Robert Burroughs, the expressed consideration for the assignment of the mortgage being $45,375.67. Other exhibits dated May 13, 1968, included what was purported to be an accord and satisfaction and release of the mortgage (unrecorded) executed by Matt Burroughs as to the farm and also an agreement for warranty deed which recited that the mortgage note had been assigned to Matt Burroughs and that the consideration for the transfer of the farm property described therein was the release of the mortgage of the farm property.

James Van Sickle, testiled that he was the attorney for the Canton State Bank, that he had prepared the documents described above and was probably present when they were signed. Although he testified they were prepared according to instructions objection was interposed and sustained so that the record does not reveal who gave the instructions. According to his testimony he charged Lena Burroughs and Matt Burroughs each $35.00 for his services and received the amounts from them.

Matt Burroughs was called as an adverse witness under Section 60. His testimony indicated that he was a man of means, owned several farms, managed real estate and during the last eight years he also purchased delinquent taxes in Fulton and adjoining counties. Matt Burroughs was also asked about the whereabouts of the original promissory note which had been assigned to him at the time of the assignment of the mortgage. It appears from the colloquy of the attorneys that demand for the production of the note had been previously made but it had not been produced. However it did appear there was a photocopy in the files of defendant's attorney apparently turned over to him by a previous attorney representing Matt Burroughs, indicating that the note had been in the possession of defendant. Matt Burroughs indicated that the note might be in some of his papers but that he had no present recollection of its whereabouts. Tender of the copy of the note as an exhibit was objected to and the court declined to admit the exhibit on the grounds that it was irrelevant. No inquiry was made of Matt Burroughs concerning any other aspect of the events in which he was involved.

The hearing on this dispute was before the court without a jury. Pursuant to defendants' motion made at the close of plaintiff's evidence the court entered judgment against the plaintiff on all counts of the complaint. So far as this appeal is concerned the plaintiff has made no claim of error regarding the action of the trial court on the counts

charging fraud and violation of a fiduciary duty. The only assignments of error relate to rulings on evidence and the court's conclusion that the evidence was insufficient to support plaintiff's claim as set forth in the first count that the warranty deed should be declared a mortgage.

▪▪▪ In *Ruckman v. Alwood,* 71 Ill.155, the Court in this early case, discusses at some length prior decisions and the then state of the law concluding that it is well settled that a deed absolute in form, may in equity be declared a mortgage if that be the intent and purpose of the transaction. As indicated in the *Ruckman* case the equitable principles applicable are usually discussed in text sections dealing with fraud, accident or mistake as grounds for granting equitable relief. However as the court points out the equitable principle which is applicable does not depend on fraud, accident or mistake but has an independent basis. Generally speaking it might be said that application of equitable principles is justified to prevent fraud which might otherwise occur if form were to conclusively prevail over substance. Equitable principles also recognize unfair advantage may be the result of coercion caused by necessitous circumstances and that devices designed to circumvent the rights of a borrower ought not to be permitted. *Cassem v. Heustis,* 201 Ill. 208, 66 N.E. 283.

Defendant Appellee has cited no cases in his brief disputing the authorities referred to by the appellant either in his brief or in this opinion or supporting the trial court's action in applying the general rules to the facts of this case. Defendants are content to argue that the evidence has no tendency to prove the plaintiff's claim. To some extent both the argument of defendants counsel and the observations of the trial court made during the progress of the trial and at the time he ruled on the final motion indicate some misapprehension concerning the equitable principle involved. Although defendants concede that a deed otherwise absolute in form, may be declared a mortgage they fail to understand that such equitable principle does not necessarily require the existence of fraud, accident or mistake. According to defendants, so long as Lena Burroughs knew she was signing a deed and so long as Matt Burroughs was not shown to be guilty of actionable misconduct no equitable relief is appropriate. Such a conclusion is contrary to the principles governing this equitable remedy. In such cases as *Ruckman v. Alwood,* 71 Ill. 155, *Totten v. Totten,* 294 Ill. 70, 128 N.E. 295 and *Davidson v. Iwanowski,* 341 Ill.App. 152, 93 N.E.2d 139, the grantor knew that he was signing a deed, executed and procured without misconduct. In *Ruckman, supra,* the Court observes, "* * * where the transaction is shown to have been meant as a security for a loan, the deed will have the character of a mortgage, without other proof of fraud

than is implied in showing that a conveyance, taken for the mutual benefit of both parties, has been appropriated solely to the use of the grantee."

■■■ No particular kind of evidence is required to prove a claim that a deed otherwise unconditional was intended as a mortgage. (*Totten v. Totten,* 294 Ill. 70, 128 N.E. 295.) Any evidence tending to show that the purpose and intention of the parties of the transaction was that of a loan and security is admissible. It is the nature of the transaction which determines the rights of the parties and not the form employed. (*Shultz v. McCarty,* 193 Ill.App. 318.) The relation of the parties, the circumstances surrounding the transaction, the appearance of the transaction, the adequacy of the consideration and the situation of the parties after the transaction may be relevant to a determination of the ultimate issue which is the intention of the parties. (*Kulik v. Kapusta,* 303 Ill. 208, 135 N.E. 402 and *Darst v. Murphy, et al.,* 119 Ill. 343, 9 N.E. 887.) The transaction was either a sale or a loan there being general agreement that no gift was intended. Thus direct evidence that a loan was intended may be complimented and supported by evidence inconsistent with or contrary to the claim that the transaction was a sale.

■■ After reviewing the evidence it is our conclusion that there is ample evidence to support plaintiff's claim and that the direction of a judgment at the close of plaintiff's evidence was erroneous.

Without extensively repeating the evidence there appear to be several aspects of the evidence apparently ignored or misunderstood. by the trial court. Initially it should be observed that the premises were not advertised for sale in the usual course, no real estate agent had been consulted, no price had been put on the premises, no offers of sale had been made and prior to the original contact with defendant the evidence indicates that plaintiff attempted to secure a loan from another relative. Nor is there any evidence indicating the property was not readily saleable for its appraised value.

■■ Next we have the conversations which took place prior to the execution of the deed. As indicated above, the testimony of Lena and her son Charles is somewhat fragmentary in part due to restrictive rulings by the trial court. However both witnesses indicated that the defendant said that they could get the property back or buy the property back. A review of the cross-examination of each of these witnesses by counsel for the defendants reveal that the latter avoided any reference to these conversations in his cross examination and avoided any questions relating to any offer to sell made by plaintiff or offer to buy by the defendant during such conversations. At best we believe conflicting

inferences may be drawn from the testimony of these witnesses and when considered with the other evidence in the case their testimony is consistent with the claim that a loan was intended and inconsistent with the claim that a sale was intended. In this connection mention should be made of the disparity in abilities of the parties involved. While disparity is not in and of itself grounds for awarding equitable relief such disparity plus the friendly relationship of kin are relevant in interpreting the conduct of the parties and in explaining the transaction.

One of the more important factors relating to the issue presented by this case is the appearance of the transaction, including particularly the related documentary evidence. Defendants' principal argument in their brief is that the transaction has all of the appearances of a regular and ordinary sale. In substance their argument is that Matt Burroughs bought the property for $45,375.67. Contrary to the defendants' assertion there are many aspects of the transaction itself which are not regular and ordinary and which in fact are inconsistent with a claim that the transaction was a sale in due course.

To start with the evidence reveals that payment to the bank was made before the agreement for warranty deed was executed. Ordinarily sales agreements are not executed after the purported consideration has been paid. Next there is payment to the bank and not payment to the alleged seller. The payment to the bank is not for release of the mortgage but for an assignment thereof and the note secured thereby. Although defendants insist that the transactions are regular in appearance even the bank officer appeared somewhat surprised that the mortgage and note were assigned rather than released and canceled which would have been the case in an ordinary sale. Van Sickle, the attorney, also testified that the assignment of the mortgage and note rather than release and cancellation was unusual. Furthermore it is noted the assignment was to the son of Matt Burroughs, a person with whom the plaintiffs had no dealings. The purported accord and satisfaction for release of the mortgage as to Lena Burroughs is likewise not part of an ordinary sale.

Of additional significance is the relation of the parties at the time of the transaction. As disclosed by the documents themselves the warranty deed was executed by one of the mortgagors to an assignee of the mortgage who was therefore at the time occupying the status of mortgagee. Such conveyances are considered highly irregular, subject to close scrutiny and justly warrant the inference of likely unfairness. However the execution of the previously described documents is almost conclusively inconsistent with any claim of sale in light of the fact that the mortgage note was never canceled or marked paid, particularly when the claim is made that the payment of the $45,000 note was the bone fide

consideration for the transfer. Defendants concede in their brief the note was never marked paid or delivered to Lena Burroughs or Charles Burroughs and both from the documents involved in the transactions and from the consequences thereof such note continues to be collectable from Charles Burroughs and continues to be secured by mortgages on two residences and farm machinery. Such a state of facts is completely irreconcilable with any claim that the transaction was a sale or that Matt Burroughs purchased the property for $45,000.

The next aspect of the evidence supporting plaintiff's claim is the inadequacy of the consideration. The evidence that the property was worth substantially more than the $45,000 is undisputed and defendants' position, apparently shared by the trial court, is that the inadequacy of consideration was irrelevant. This is not the rule. While the courts have said that inadequacy of consideration is not by itself sufficient to warrant equitable relief it may be regarded as a potent circumstance (*Walker v. Streeter*, 87 S.W.2d 43, Ark. Sup. Ct. 1935) or a strong circumstance (*Beeler v. American Trust Co.*, 140 P.2d 814, Sup. Ct. Calif. 1943) tending to show that a deed was intended to operate as a mortgage and not as an absolute conveyance. (See also *Davidson v. Iwanowski*, 341 Ill.App. 152, 93 N.E.2d 139 and *Totten v. Totten*, 294 Ill. 70, 128 N.E. 295.) If a transfer of property is for an adequate consideration i.e., its fair value, such fact would tend to support the claim that the transaction was intended as a sale. Where the consideration is grossly inadequate as in this case, a contrary inference is strongly indicated.

The last aspect of this case which we believe it necessary to consider involves the representation of Lena Burroughs by an attorney. So far as the record presently stands it is undisputed from the testimony of Lena and Charles that they were advised that no attorney was necessary. Nevertheless in response to the argument of plaintiff that Lena was not represented by an attorney the defendants have adopted three positions. First, it is said that she was represented by Van Sickle, next that Van Sickle represented both the plaintiff and defendants and finally that Van Sickle represented only the bank and did not represent either of the parties.

As is often the case in connection with real-estate transactions one attorney may well be acting for more than one party whose interests are in fact conflicting. As shown by the tenor of the questions, Van Sickle was called as a witness for the purpose of showing that Lena had not received any legal advice concerning the transaction and that the documents had been prepared by the attorney pursuant to the instructions of and for the benefit of the defendants. Objections were made to

some questions asked of this witness and were sustained by the court. No offers of proof were made and in an effort to alleviate this deficiency the plaintiff after the decision was rendered by the trial court, filed the pre trial depositions of Van Sickle and Mason, the bank officer, and sought to have such depositions included as part of the record. Pursuant to appropriate motion the trial court struck the depositions from the record and the plaintiff has renewed his effort to have such depositions made a part of the record in this court.

■■ It is admitted the depositions were not admitted as exhibits, were not considered as evidence in the case and in our view do not constitute part of the pleadings. The mere fact that such pre trial depositions may be filed does not make them part of the record and certainly the depositions are inappropriate as a substitute for an offer of proof. Accordingly it is our decision that such depositions are not part of the record before us.

Since in our opinion this case must be remanded for further proceedings we believe it unnecessary to decide whether the court properly sustained the objections to Van Sickles' testimony since it is unlikely that the same questions will again arise. In so far as Van Sickles' testimony is relevant to the issues of this case it is clear that Lena Burroughs did not receive any independent legal advice or for that matter any legal advice. From Van Sickles' testimony it appears that he acted directly or indirectly in behalf of and for the benefit of Matt Burroughs. Without deciding that the dual representation of the parties by Van Sickle has any special consequences in this case it can be said that the circumstances presented afford a potential for misunderstanding and unfair advantage. From Van Sickles' testimony it may be inferred that the form of the transaction was directly by Matt Burroughs, that the form of the transaction was for Matt Burroughs advantage and did not necessarily represent the substance of the transaction.

For the foregoing reasons the judgment of the Circuit Court of Fulton County is reversed and remanded with directions to proceed in accord with the views expressed herein.

Reversed and remanded with directions.

ALLOY, P. J., and SCOTT, J., concur.