JOHN McGILL, Plaintiff-Appellee, *v.* JOHNNY BIGGS, Defendant-Appellant.

Third District   No. 81-394

Opinion filed March 19, 1982.

Timothy C. Evans, of Chicago, for appellant.

Mark R. Steffen, of Kankakee, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiff's mother, Ivory Anderson, died on October 7, 1977, leaving him as the surviving joint tenant of certain real estate located in Kankakee County, commonly known as Route 3, Box 446, Momence, Illinois. Plaintiff desired to provide her with a funeral at the Wesley Funeral Home with which his half-uncle, the defendant, was familiar, and plaintiff requested defendant's assistance in raising the funds necessary which approximated $1,500.

Plaintiff asked defendant to accompany him while he attempted to borrow the money at banks in Momence, Kankakee and Chicago. Defendant accompanied plaintiff in his efforts to borrow the necessary funds for his mother's funeral but they were unsuccessful.

Plaintiff and defendant then entered into an agreement whereby in return for defendant's paying the funeral bill for plaintiff's mother (who

was also the defendant's half-sister) plaintiff would deed the premises to defendant.

Plaintiff was vague as to the nature of the transaction, but testified that defendant told him he would need a quitclaim deed as "collateral." Plaintiff did not know what a quitclaim deed was but he understood the meaning of "collateral." Plaintiff testified that he didn't intend to permanently transfer the title to the property to the defendant. Plaintiff testified that he valued the property at approximately $15,000, while defendant testified he didn't know the value of the property. Defendant admitted that he knew plaintiff was upset and distressed when the transaction took place.

Plaintiff and defendant went to defendant's attorney's office where plaintiff signed a paper he thought was a contract to pay defendant $115 a month for 15 months ($1,725). A warranty deed was prepared by defendant's attorney and signed by plaintiff when he went to the lawyer's office on October 9, 1977, two days after his mother's death. The next day, defendant paid the funeral bill in the sum of $1,473.75.

Plaintiff made one payment to defendant before losing his job and generally falling on hard times by drinking heavily. No further payments were made to defendant. Plaintiff and his family made temporary use of the premises on several occasions after delivery of the deed to defendant at his lawyer's office. Defendant conceded he did not go to the house after his half-sister died. Plaintiff continued to keep the property in good repair and to pay the 1978 and 1979 taxes on the property and defendant made no attempt to pay any taxes on the property until October of 1980, when his check was returned, indicating that the taxes had already been paid. In January of 1980, plaintiff had offered to pay defendant the balance of the debt but defendant refused payment. In June of 1980, defendant recorded the deed.

Defendant never used the property or interfered with plaintiff's use until June 1980, when plaintiff discovered that defendant was attempting to list the property for rent with a real estate broker. Plaintiff contacted an attorney, discovered the warranty deed and filed the instant suit to quiet title, the issue being whether the deed was absolute with a contract back to repurchase, or whether it was intended as a mortgage to secure repayment of the funeral bill.

From the trial court's ruling in plaintiff's favor (plaintiff was ordered to pay the balance due on the loan of $1,610 plus 5% per annum on $1,473.75 from January 10, 1980) that a debt relationship existed between the parties and that the warranty deed was in fact a mortgage, defendant has appealed.

We note initially that it is provided by statute that:

"Every deed conveying real estate, which shall appear to have

been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." Ill. Rev. Stat. 1977, ch. 95, par. 55.

■■ In order to convert a deed absolute on its face into a mortgage, the proof must be clear, satisfactory, and convincing (*Burroughs v. Burroughs* (1973), 11 Ill. App. 3d 176, 296 N.E.2d 350), and can come from almost every conceivable fact that could legitimately aid that determination. Each case will depend upon its own special circumstances. *Warner v. Gosnell* (1956), 8 Ill. 2d 24, 132 N.E.2d 526.

Many circumstances have been recognized or considered by Illinois courts, including the existence of an indebtedness, the close relationship of the parties, prior unsuccessful attempts for loans, the circumstances surrounding the transaction, the disparity of the situations of the parties, the lack of legal assistance, the unusual type of sale, the inadequacy of consideration, the way the consideration was paid, the retention of the written evidence of the debt, the belief that the debt remains unpaid, an agreement to repurchase, and the continued exercise of ownership privileges and responsibilities by the seller. *Burroughs v. Burroughs* (1971), 1 Ill. App. 3d 697, 274 N.E.2d 376; *Burroughs v. Burroughs* (1973), 11 Ill. App. 3d 176, 296 N.E.2d 350; *Robison v. Moorefield* (1952), 347 Ill. App. 508, 107 N.E.2d 278; *Havana National Bank v. Wiemer* (1975), 32 Ill. App. 3d 578, 335 N.E.2d 506; *Warner v. Gosnell* (1956), 8 Ill. 2d 24, 132 N.E.2d 526; *Illinois Trust Co. v. Bibo* (1927), 328 Ill. 252, 159 N.E. 254; *Miller v. Thomas* (1853), 14 Ill. 428; *Wilkinson v. Johnson* (1963), 29 Ill. 2d 392, 194 N.E.2d 328.

■■ The defendant contends the trial judge erred in finding a debt relationship when neither party directly testified that plaintiff owed a debt to defendant, or that defendant would reconvey to plaintiff upon payment of such debt. However, direct evidence is not required. In fact, no particular kind of evidence is required. (*Burroughs v. Burroughs* (1971), 1 Ill. App. 3d 697, 274 N.E.2d 376.) However, a debt relationship is essential to a mortgage.

In the case at bar, there are a number of circumstances which prove the existence of a debt relationship. Plaintiff signed the warranty deed after defendant told him that the only way to get money for the funeral would be to sign a quitclaim deed for collateral. Although plaintiff thought he was signing a contract to pay off the funeral bill, defendant testified that they discussed collateral to get money for the funeral expenses, and came to the agreement that plaintiff would sell his property to the defendant for the amount of the funeral bill and then pay defendant $115 per month for 15 months to get it back. The plaintiff, however, did not intend to sell his property.

The bulk of evidence in this case is the testimony of the plaintiff and

defendant. The trial judge believed they were both honest. Their testimony differs, but not substantially. They both had difficulty making responsive answers, but the answers they gave often shed light on the nature of the transaction.

A debt relationship was indicated by defendant's attempt at collection. Defendant confronted and questioned plaintiff about plaintiff's failure to make the monthly payments as he had promised. This is a reasonable action for defendant, who was concerned about plaintiff falling behind in his debt payments. It is not reasonable to expect a person obligated to reconvey to be encouraging the other party to exert their "rights."

Further support of a debt relationship comes from defendant's own characterization of the agreement to reconvey. Defendant consistently referred to the payments plaintiff could make as "my money." He spoke in terms of expectation of payment, as if the money to be paid by plaintiff was his already which was owed to him for payment of the funeral bill. This is supported further by defendant's testimony that upon payment by plaintiff, defendant would "redeem" his property back to him.

Another circumstance to consider is the value of the consideration as compared to the payback amount. The consideration was approximately $1,500 and the total payback amount after 16 months would be $1,725. These figures would be in line with a typical installment loan agreement.

In determining the issue presented in this appeal, we direct our attention to what we deem to be pertinent factors. The inadequacy of consideration has been regarded as a potent or strong circumstance tending to show that a deed was intended to operate as a mortgage and not a sale; and where consideration is grossly inadequate, a mortgage is strongly indicated. *Burroughs v. Burroughs* (1971), 1 Ill. App. 3d 697, 705.

Here, the consideration was less than 10% of the value of the property.

Several factors regarding the transaction in this case are similar to the circumstances in *Burroughs*. The property was not advertised or offered for sale. The consideration was not paid to the plaintiff, but was paid to the Wesley Funeral Home for the funeral bill of plaintiff's mother. In addition, defendant did not even consider the value of the property when he purchased it, or the amount of consideration.

Plaintiff tried to borrow money for his mother's funeral in three different cities, with no mention of collateral. Defendant offered to go to his friends for help, and plaintiff ended up with defendant in the office of his attorney signing a warranty deed instead of a loan agreement. This situation is similar, but even more significant than the one noted in *Burroughs*, and should be weighed accordingly.

In *Totten v. Totten* (1920), 294 Ill. 70, 80, 128 N.E. 295, 299, the court stated: "The fact that the grantor in a deed absolute in form has remained

in possession of the property so conveyed and controlled the property after the conveyance is evidence tending to show that the transaction, in fact, was a mortgage, as is also the payment of taxes by the grantor after the conveyance." The reason for this rule is obvious, since the grantee in an unqualified deed is entitled to immediate possession and becomes liable for payment of taxes. In the instant case the uncontradicted testimony was that plaintiff and his family made use of the premises on several occasions after the delivery of the deed, and that he kept a lock on the door. Defendant conceded he had not been in the house since his half-sister died. Plaintiff paid the 1978 and 1979 taxes and defendant made no attempt to pay taxes until October 1980, when his check for the 1979 taxes was returned because they were already paid. It is clear he attempted to exercise none of the prerogatives of an owner until over two years after the time he claims to have become the owner and at a time when plaintiff was in default on all of the payments on the alleged contract except the first. It is of further significance that defendant failed to take another step usually associated with ownership. He did not record his deed at the time of delivery or until well beyond the time that the 15 months had expired. This delay, while not of great significance standing alone, is a further circumstance, when considered with others, indicating a lack of intention by defendant to claim immediate ownership.

An agreement to reconvey has long been considered a significant factor in distinguishing mortgages from absolute sales. Agreements made in writing at the same time as the conveyance resolve any doubt as to the character of the conveyance in favor of a mortgage. (*Illinois Trust Co. v. Bibo* (1927), 328 Ill. 252, 159 N.E. 254.) However, the agreement need not be in writing. *Miller v. Thomas* (1853), 14 Ill. 428.

In the case at bar, the agreement to reconvey was admitted by the defendant to be a part of the deed transaction. If there is doubt as to the intent of the conveyance, it should be resolved in favor of a mortgage.

■■ Any one of these preceding factors should be enough to find the trial court did not commit manifest error. The mass of relevant circumstances clearly and convincingly prove that the intention of the parties was to create a debt arrangement with a security. Based upon these circumstances, the trial judge was correct in finding a debt relationship existed, and that plaintiff's warranty deed to defendant was a mortgage.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.