HAVARD GENE NAVE, Plaintiff-Appellant, v. HOWARD DWAINE HEINZMANN *et al.*, Defendants-Appellees.

Fifth District   No. 5—02—0091

Opinion filed November 21, 2003.

M. Keith Smith, of Law Office of M. Keith Smith, of Mt. Vernon, for appellant.

Samuel E. Bauerle, of Salem, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The plaintiff, Havard Gene Nave, filed suit against the defendants, Howard Dwaine Heinzmann (Dwaine Heinzmann) and Lyndell R. Heinzmann, in the circuit court of Marion County, Illinois. After a bench trial, the court entered a judgment order requiring the defendants to repay the plaintiff $15,000 but denying other relief sought by the plaintiff. On appeal, the plaintiff raises these issues: (1) whether the trial court erred in denying his request for specific performance and (2) whether the trial court erred in failing to require the defendants to pay interest on the damages awarded to the plaintiff. We affirm.

## FACTS

The plaintiff filed a four-count complaint against the defendants. The plaintiff alleged that on or about June 5, 1996, the plaintiff and defendant Dwaine Heinzmann entered into a written contract regarding the sale of real estate located in Marion County. The plaintiff al-

leged that at the time he entered into the contract, he delivered a $15,000 check to defendant Lyndell R. Heinzmann (Dwaine's son) and that said amount was drawn from the plaintiff's account on June 7, 1996.

In count I of the complaint, the plaintiff requested specific performance. The plaintiff alleged that he had demanded a deed from the defendants but that the defendants had failed to deliver the deed. The plaintiff alleged that at all times since the execution of the real estate purchase contract, he has been ready, willing, and able to pay the outstanding balance owed pursuant to the contract. Other counts in the complaint alleged fraud, conspiracy to commit fraud, and breach of contract.

Attached to the complaint was a copy of a check in the amount of $15,000, dated June 5, 1996, made payable to defendant Dwaine Heinzmann. The memo portion of the check states "earnest money 60 acres."

Also attached to the complaint was a copy of the purchase contract. The contract identified defendant Dwaine Heinzmann as "Seller" and the plaintiff as "Buyer" or "Purchaser." The contract stated in part:

"Fifteen Thousand Dollars ($15,000.00) as earnest money to be applied on such purchase price when the sale is consummated, and the balance of Ten Thousand Dollars ($10,000.00) (subject to pro[ ]rations of taxes, etc.) shall be paid upon delivery of deed, which shall occur on or before June 14, 1996, unless otherwise herein provided or extended by agreement of all parties."

The contract also provided, "Upon acceptance of this offer, it becomes a binding contract and Seller shall complete said agreement on or before June 14, 1996, if not sooner performed."

Paragraph A of the contract provided, "In the event Seller fails to perform upon this agreement, all earnest money tendered shall be returned in full to Buyer."

Paragraph F stated:

"Should said Purchaser fail to perform this contract promptly on his part, at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the Seller, be forfeited by the Purchaser as liquidated damages, and this contract shall thereupon become and be null and void, and the Seller shall then have the right to re[ ]enter and take possession of the premises aforesaid."

The contract also contained a right to repurchase. Paragraph D provided:

"Seller reserves and Buyer grants unto Seller[ ] the right to re[ ]purchase the above described real estate during a six[-]month period ending December 30, 1996[,] for the sum of Twenty-five

Thousand Dollars ($25,000.00) together with interest at the rate of 10% per annum, plus all costs and taxes. Should Seller exercise the right to re[ ]purchase said real estate before the expiration date, Seller *** shall be entitled to 100% of all growing crops. Should Seller *** fail to re[ ]purchase said real estate, [Buyer] shall pay to [Seller] 1/3 of all existing seed and fertilizer expenses and shall receive 1/3 of growing crops."

The purchase contract also indicates that it was filed with the Marion County recorder of deeds on June 19, 1998.

The defendants filed an answer admitting that on or about June 5, 1996, the plaintiff and defendant Dwaine Heinzmann had entered into a written contract concerning the sale of certain real estate. The defendants also admitted that the plaintiff had delivered a $15,000 check to defendant Lyndell R. Heinzmann towards the purchase price of $25,000. The defendants denied the remaining allegations in the complaint but raised no affirmative defenses.

On November 9, 2001, the court conducted a bench trial. The plaintiff testified that on June 5, 1996, he signed an agreement to purchase approximately 60 acres of rough, open farmland from the defendants. The plaintiff knew the defendants and had previous property dealings with them over the prior three or four years. The plaintiff was familiar with the property and had purchased the property from defendant Lyndell R. Heinzmann on a previous occasion and had resold the property to the defendants prior to entering into this contract. The plaintiff stated that it was his intention that the $15,000 payment function as a down payment and not just earnest money. The plaintiff testified that he had more than $35,000 sitting in a credit union account and was ready and willing to make the final payment of $10,000 on the date assigned for the closing.

According to the plaintiff, at the time the contract was entered into, the defendants had already sold 20 acres of the land to Irvin Buchholz. The plaintiff testified that after entering into the contract, but prior to the date set for the closing, defendant Lyndell R. Heinzmann stated that he would get the title to the property straightened out. Because the plaintiff knew that the defendants did not have the ability to deliver clear title, he did not try to contact them for the next two to three weeks. The plaintiff testified that it was his understanding that the defendants would offer a deed to the entire property once it was cleared, but they never contacted him to say they had a deed ready. The plaintiff testified that for the first year or two, he attempted to contact the defendants on numerous occasions. The plaintiff telephoned the homes of both the defendants several times and went to the defendants' attorney's office at least three or four times. On

two or three occasions the plaintiff was able to talk to Dwaine. The plaintiff stated that Dwaine said he would call the plaintiff back, but he never did. The plaintiff stated that he called Dwaine again, but Dwaine told him to talk to Lyndell. The plaintiff went by Lyndell's home approximately four to six times, and although Lyndell was never home, the plaintiff left word with Lyndell's wife that he was there to try to close on the contract. The plaintiff determined that the defendants were hiding from him. He then recorded the contract at the Marion County recorder of deeds office in order to inform anyone who might attempt to purchase any of the property. On May 3, 2000, the plaintiff sent Lyndell a letter by certified mail requesting the deed to the property.

Mary Heinzmann, Lyndell's wife, stated that the plaintiff came by her residence only one time and that was in 1998.

Defendant Dwaine Heinzmann testified that the plaintiff called a couple of times in the fall of 1997 or 1998 looking for Lyndell regarding the contract. Dwaine testified that he had signed a deed to complete the transaction but that he did not know whether the deed was ever proffered to the plaintiff.

Defendant Lyndell Heinzmann testified that he negotiated the terms of the contract with the plaintiff. He stated that he contacted Irvin Buchholz and had him sign a deed to clear title by June 14, 1996. Lyndell testified that in the four years prior to entering into the contract, he and his father had been doing property sales and assignment of contracts with the plaintiff in loan-type situations. Most of the closings were performed at the defendants' attorney's office, and all were completed on time. Lyndell testified as follows:

"Q. [Mr. Bauerle:] Now this wasn't the first time that you had sold property or you or your father had sold property to Mr. Nave with a buy[-]back option, was it?

A. No. I mean actually the way they really consisted of [sic] was a loan[,] and we used property as collateral and put it back in Gene Nave[,] and then he gave us the contract back to purchase that property.

Q. And you had always redeemed that property?

A. Yes, I have, or my dad has."

Lyndell testified that a couple days after the contract was signed, he contacted the plaintiff to inform him that there had been a mistake in the deed from Irvin Buchholz in that an "N" should have been an "S." Lyndell told the plaintiff that he had contacted Buchholz and was in the process of the correcting the deed. Lyndell also told the plaintiff they would be able to close by the scheduled date of June 14, 1996. Lyndell testified that the plaintiff did not show up for the closing and

did not contact him for more than two years. Lyndell testified that the plaintiff did not contact him about the contract until 1998 and that at no time did Lyndell conceal his location.

The trial court entered an order awarding the plaintiff $15,000 in contract damages but denying the plaintiff's request for specific performance. The court specifically found there had been no intent to defraud by the defendants and that the plaintiff had not made a demand to perform within a reasonable time. The court found that both the buyer and the seller were ready, willing, and able to perform at the time originally set for the closing. The plaintiff appeals.

## ANALYSIS

■ According to section 5 of the Mortgage Act (Act):

"Every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." 765 ILCS 905/5 (West 2002).

■ The trial court found that the proposed transaction of real estate in the contract appeared to have been intended only as a security in the nature of a mortgage:

"4. The policy of providing for specific performance in real property transactions of course relates to the unique nature of real property. Yet here the parties have described a series of such transactions involving real estate that were used rather as a means for [the] [p]laintiff to lend money to the [d]efendants. Those contracts, like the immediate one, include unusual language in paragraph D that provides seller with a repurchase right. Further, [the] [p]laintiff did not act as if the property was unique. Indeed, approximately two years past [*sic*] before [the] [p]laintiff made a written inquiry and nearly five years before the filing of suit. Although [the] [d]efendants did not plead equitable estoppel or laches, it is also apparent that the [d]efendants did reasonably assume that the contract would not be enforced and proceeded to encumber the property."

Thus, the trial court correctly treated the contract for the sale of real estate as a mortgage. See 765 ILCS 905/5 (West 2002). Neither party addresses the Act or the concept of equitable mortgage, from which this section of the Act arises. The trial court and this court are not limited to the arguments of the parties. *AIDA v. Time Warner Entertainment Co., L.P.*, 332 Ill. App. 3d 154, 159, 772 N.E.2d 953, 958 (2002).

■ The plaintiff contends that he is entitled to specific performance. Where a contract for the sale of real estate has been entered into without misrepresentation, unfairness, or superior advantage, specific

performance will be granted to either the buyer or the seller. See *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 841, 781 N.E.2d 1114, 1120 (2002); *Omni Partners v. Down*, 246 Ill. App. 3d 57, 64, 614 N.E.2d 1342, 1347 (1993); *Forest Preserve District of Cook County v. Emerson*, 341 Ill. 442, 444, 173 N.E. 477, 478 (1930).

Under the Act, however, a contract for the transfer of a deed is to be considered as a mortgage and not as a land sale contract if the parties intended the land to function as security. 765 ILCS 905/5 (West 2002). In its discussion of the plaintiff's count IV for breach of contract, the trial court described the $15,000 as "earnest money" and discussed the obligations of the parties under the contract according to whether a deed had been delivered. See *Cummings v. Beaton & Associates, Inc.*, 249 Ill. App. 3d 287, 618 N.E.2d 292 (1992); *Linster v. Regan*, 108 Ill. App. 2d 459, 248 N.E.2d 751 (1969). The court's discussion does not negate its finding that the parties intended to create a loan. Thus, the trial court's decision does not rest on the uniqueness of the property, but on the centrality of the property to the agreement. All land is assumed to be unique. 81 C.J.S. *Specific Performance* § 76 (2001). Where land is the subject matter of an agreement, the inadequacy of legal remedies is well established. *Giannini v. First National Bank of Des Plaines*, 136 Ill. App. 3d 971, 981, 483 N.E.2d 924, 933 (1985). A party need not prove the uniqueness of land for specific performance. 81 C.J.S. *Specific Performance* § 76 (2001); D. Dobbs, Handbook on the Law of Remedies § 12.10 (1973). The determination of this case, however, rests on whether the parties intended to enter into a contract for the transfer of a deed or intended to create a mortgage. 765 ILCS 905/5 (West 2002).

The Act codifies the long-standing concept of equitable mortgage. See *Totten v. Totten*, 294 Ill. 70, 77, 128 N.E. 295, 298 (1920); *Ruckman v. Alwood*, 71 Ill. 155, 158 (1873). The relevant factors in determining whether a deed that is absolute in form was intended to be a mortgage include the relationship of the parties, the circumstances surrounding the transaction, the adequacy of the consideration, and the situation of the parties after the transaction. *Silas v. Robinson*, 131 Ill. App. 3d 1058, 1062, 477 N.E.2d 4, 7 (1985). The declaration that a deed, which is otherwise absolute in form, is a mortgage does not require the existence of fraud, accident, or mistake. *Burroughs v. Burroughs*, 1 Ill. App. 3d 697, 702, 274 N.E.2d 376, 380 (1971). The question of whether a deed is a transaction in real estate or is to be taken as a mortgage depends on the intention of the parties at the time of the execution. *Beelman v. Beelman*, 121 Ill. App. 3d 684, 688, 460 N.E.2d 55, 57 (1984).

The trial court's determination that the transaction was actually a

loan is supported by the evidence. Defendant Lyndell Heinzmann testified that this contract was one in a series of such contracts that operated as loans where the defendants would buy back the property from the plaintiff after allowing the plaintiff to farm the land. The fact that the parties delayed any action on the agreement supports the conclusion that the parties intended to create a mortgage. See *McGill v. Biggs*, 105 Ill. App. 3d 706, 710, 434 N.E.2d 772, 775 (1982). The court found that approximately two years had passed before the plaintiff made a written inquiry and nearly five years before he filed suit. The court found that the defendants reasonably assumed that the land transfer would not be enforced and proceeded to encumber the property. Thus, the court concluded that the uniqueness of the property was not central to the agreement entered into between the parties.

The language of the contract describing the farming of the land supports such a reading. The clause in the contract granting the defendants a right to repurchase the property supports a reading that the transaction was actually a loan. The clause provided that the defendants reserved a right to repurchase the property within six months after the closing. The repurchase provision also provided:

> "Should Seller exercise the right to re[ ]purchase said real estate before the expiration date, Seller *** shall be entitled to 100% of all growing crops. Should Seller *** fail to re[ ]purchase said real estate, Buyer shall pay to Seller ¹/₃ of all existing seed and fertilizer expenses and shall receive ¹/₃ of growing crops."

Agreements to reconvey are an indication that the parties intended the transaction to be a mortgage and not a conveyance. *McGill*, 105 Ill. App. 3d at 710, 434 N.E.2d at 775; *Warner v. Gosnell*, 8 Ill. 2d 24, 31, 132 N.E.2d 526, 529 (1956); *In re Estate of Scheribel*, 340 Ill. App. 238, 246, 91 N.E.2d 443, 447 (1950). The provisions for the payment of seed, fertilizer, and crop expenses further support a reading that the parties intended the land to operate as security for a loan to facilitate farming on the property.

■ The determinative question is the intent of the parties. *Beelman*, 121 Ill. App. 3d at 688, 460 N.E.2d at 57. Under the doctrine of equitable mortgage, in order for a court to convert a deed that is absolute on its face into a mortgage, the proof must be clear, satisfactory, and convincing. *Burroughs v. Burroughs*, 11 Ill. App. 3d 176, 178, 296 N.E.2d 350, 351 (1973). This proof can come from almost every conceivable fact that could legitimately aid that determination, and the decision in each case will depend on its own circumstances. *McGill*, 105 Ill. App. 3d at 708, 434 N.E.2d at 773-74.

Although no particular kind of evidence is required for this

determination, it is essential for a mortgage that there be a debt relationship. *McGill*, 105 Ill. App. 3d at 708, 434 N.E.2d at 774. In this case, a debt relationship was formed under a contract. The parties agreed that the defendants would be indebted to the plaintiff. The parties intended for the land to serve as security for what was in essence a loan under the contract. See *First Illinois National Bank v. Hans*, 143 Ill. App. 3d 1033, 1036, 493 N.E.2d 1171, 1173 (1986).

■ The record supports the trial court's finding that the parties intended to create a loan with the property being security. Under Illinois law, this is to be treated as a mortgage. 765 ILCS 905/5 (West 2002).

The plaintiff contends that he is entitled to interest. The plaintiff argues that where a contract for the sale of land is rescinded, the parties must be restored to the position they were in at the time of the execution of the contract and the purchaser is entitled to the restoration of the purchase money and the interest thereon. See *Williams v. Dunas*, 40 Ill. App. 3d 782, 784, 352 N.E.2d 266, 269 (1976); *Brock v. Pomeroy*, 305 Ill. App. 127, 135, 27 N.E.2d 56, 60 (1940). These cases deal with land sale contracts. The cases do not address a situation such as the case at hand where the parties contracted to form a loan where the land functioned as security. See *Williams v. Dunas*, 40 Ill. App. 3d 782, 784, 352 N.E.2d 266, 269 (1976); *Brock v. Pomeroy*, 305 Ill. App. 127, 135, 27 N.E.2d 56, 60 (1940).

The plaintiff does not point to any part of the agreement providing for interest or the amount of interest. An argument could be made that the contract provided that interest would have been paid upon the repurchase of the land by the defendants. Any claim by the plaintiff under this provision is unfounded because the court found that the plaintiff "did not, within a reasonable time, make a demand to perform." See *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 115 Ill. 2d 119, 129, 503 N.E.2d 233, 238 (1986) (no interest awarded when the plaintiff failed to submit a timely application); see also *In re Estate of Miller*, 334 Ill. App. 3d 692, 704, 778 N.E.2d 262, 272 (2002) (whether equity requires an award of interest is a matter within the sound discretion of the trial court). The plaintiff's claim for interest is unsupported.

## CONCLUSION

Accordingly, the order of the circuit court is hereby affirmed.

Affirmed.

MAAG and DONOVAN, JJ., concur.